PEOPLE v BROOKS

Docket No. 298299. Submitted July 12, 2011, at Detroit. Decided August
16, 2011, at 9:00 a.m. Vacated in part; leave to appeal denied with
respect to remaining issues, 490 Mich 993.

Anthony Brooks asserted his right to self-representation during his
preliminary examination on charges of entering without breaking
with intent to commit a larceny stemming from incidents at an
automotive plant in Detroit in September 2008 and November
2008. The district court granted defendant's request, but defen-
dant allowed his appointed counsel to take over during the
proceedings. After defendant was bound over to the Wayne Circuit
Court on the charges, he reasserted his right of self-representation
during his arraignment. The court, Margie R. Braxton, J., peremp-
torily denied defendant's request, but defendant continued to
assert his desire to represent himself. Following the arraignment,
a calendar conference and pretrial hearing was conducted by the
court, Daniel P. Ryan, J., during which defendant complained
about his attorney but did not express a desire to proceed without
counsel. During this period, the court granted defendant's motion
to sever the charges and first proceed with the charge regarding
the September 2008 incident. At a subsequent final pretrial
conference, defendant again expressed his desire to represent
himself and Judge Ryan denied the request. When his trial began,
defendant again requested that he be allowed to represent himself.
Judge Ryan again denied the request. Defendant eventually en-
tered a plea of nolo contendere to the charge arising from the
November 2008 incident. A jury convicted defendant of the charge
arising from the September 2008 incident and he was sentenced as
a fourth-offense habitual offender to life imprisonment by Judge
Ryan. Defendant appealed, alleging a violation of his right to
self-representation and that the court abused its discretion by
imposing a life sentence.

The Court of Appeals held:

1. A court may not permit a defendant to make an initial
waiver of the right to be represented by counsel without first
advising the defendant of the charge, the maximum possible prison
sentence for the offense, any mandatory minimum sentence re-

quired by law, and the risk involved in self-representation. The court must also offer the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer. If the defendant waives counsel, the record of each subsequent proceeding must show that the court advised the defendant of the continuing right to a lawyer's assistance and that the defendant waived that right. Before beginning the proceedings, the court must reaffirm that a lawyer's assistance is not wanted, or, if the defendant requests a lawyer and is financially unable to retain one, the court must appoint one, or, if the defendant wants to retain a lawyer and has the financial ability to do so, the court must allow the defendant a reasonable opportunity to retain one.

2. In addition to the trial court's responsibility to engage, on the record, in a methodical assessment of the wisdom of self-representation by the defendant, the court must also determine that the defendant's waiver of counsel is unequivocal, that the defendant actually does understand the significance and consequences of self-representation, and that self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business.

3. The trial court failed to meaningfully assess the validity of defendant's waiver of counsel. Neither judge attempted to engage in a methodical assessment of the wisdom of self-representation or pursued a dialogue with defendant testing the unequivocality or voluntariness of his waiver of counsel, or the knowing and understanding nature of his self-representation request.

4. A defendant's technical knowledge of legal matters has no relevance to an assessment of the defendant's knowing exercise of the right to self-representation. Both judges erred in invoking defendant's lack of legal ability as a ground for denying his request for self-representation. Compelling a criminal defendant to demonstrate some level of mastery of court procedures and expert legal erudition effectively eviscerates the constitutional right to self-representation. The denial of defendant's right to self-representation was a structural error that requires vacation of the conviction regarding the September 2008 offense. The matter is remanded to the trial court for a new trial.

5. A trial court may deny self-representation where a defendant does not possess the requisite mental competence to handle the task. Although the trial court legitimately questioned defendant's competence to waive counsel, the court neglected to undertake any competency assessment. The trial court never questioned whether defendant was competent to stand trial and failed to

explore defendant's competency to waive his right to counsel or to conduct his own defense. The trial court did not properly deny self-representation on the basis of defendant's alleged mental incapacity.

6. The trial court did not err by holding that defendant's criminal history and recidivist behavior constituted objective and verifiable factors establishing a firm probability of defendant's future criminal activity and that the sentencing guidelines afforded inadequate weight to defendant's recidivist behavior. However, the trial court abused its discretion by imposing a life sentence for a conviction that otherwise warranted a minimum sentence of less than four years. The life sentence fell outside the range of principled outcomes. If defendant is convicted on retrial, the trial court must impose a proportionate sentence that takes into consideration the offender and the offense

Conviction and sentence vacated and case remanded for a new trial.

CRIMINAL LAW — CONSTITUTIONAL LAW — RIGHT TO COUNSEL — WAIVER.

A criminal defendant's technical knowledge of legal matters has no relevance to a trial court's assessment of the defendant's knowing exercise of the right to self-representation.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Jon P. Wojtala*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Michael L. Mittlestat*) for defendant.

Before: TALBOT, P.J., and HOEKSTRA and GLEICHER, JJ.

GLEICHER, J. Anthony Brooks, no stranger to the criminal justice system, insisted on representing himself against a charge that he had unlawfully entered a DaimlerChrysler Corporation factory storage area intending to commit a larceny inside. Brooks unsuccessfully asserted his right to self-representation at his arraignment, a pretrial conference, and on the day trial

commenced. A jury ultimately convicted Brooks as charged. Because the trial court denied Brooks's Sixth Amendment right to self-representation without conducting a meaningful inquiry and in reliance on constitutionally impermissible criteria, we vacate Brooks's conviction and remand for a new trial. We further hold that the trial court abused its discretion when it departed from the minimum sentencing guidelines range of 9 to 46 months' imprisonment and imposed a disproportionate life sentence.

### I. UNDERLYING FACTS AND PROCEEDINGS

In September 2008 and November 2008, security guards saw Brooks scale a high, barbed-wire-topped fence surrounding a DaimlerChrysler Corporation plant in Detroit. On both occasions, the guards witnessed Brooks run through a storage area housing automotive parts. During the November 2008 incursion, a security guard observed Brooks leave the grounds with two stolen tires. Surveillance video footage of both events supported the guards' trial testimony. The trial court granted Brooks's pretrial motion to sever the September 2008 and November 2008 charges, and Brooks initially proceeded to trial on the September entering event. The jury convicted Brooks of entering without breaking with intent to commit larceny in violation of MCL 750.111. Later, Brooks pleaded nolo contendere to charges arising from the November 2008 plant entry.

Brooks urges this Court to reverse his jury trial conviction because the trial court violated his right to self-representation. Brooks first expressed a desire to waive his right to counsel at his preliminary examination. The district court granted Brooks's request, but

Brooks allowed his appointed counsel to take over midway through the hearing.

Brooks reasserted his right of self-representation at a circuit court arraignment before Wayne Circuit Court Judge Margie R. Braxton. Judge Braxton peremptorily denied Brooks's request, ruling: "Well, I'm not going to let him represent himself. Someone has to assist him and right now [defense counsel] you are assisting him. You can't come here and take over. I'm sorry. No." Shortly thereafter, Brooks interrupted to reiterate his desire to represent himself:

> [*Brooks*]: Okay. But, see, I'm having problems with my lawyer. . . . First of all, he come to me asking me questions with information that . . . . They say I got a plea. He give me no full information on anything. . . . Then he's contesting . . . when I explained to him the time limits and statutes on certain things and --
>
> *The Court*: Oh, so you're going to be the lawyer?
>
> [*Brooks*]: *I asked to represent myself.*
>
> *The Court*: You know more about the statute than he does?
>
> [*Brooks*]: Yeah. Your Honor, I have studied law for a while.
>
> *The Court*: Well, I can tell you've been studying but you only got a little bit of it. You got to get the whole dose.
>
> [*Brooks*]: I got the whole dose. . . .
>
> \* \* \*
>
> *The Court*: What is the problem with your lawyer?
>
> [*Brooks*]: My problem with my lawyer is that it's the responsibility and the duty of the client and the lawyer to put full representation of the defense and he's lacking. . . . The first thing he didn't do at this Court when I asked him to come and explain to me that I had already had time served probation, I had asked him to come here and see

what the plea agreement was. He didn't give me the full scope of the plea. What am I supposed to do, plea in the blind? . . .

*The Court*: From listening to you, I suspect you didn't give him an opportunity. . . . [To defense counsel] Do you [defense counsel] want to represent him because the information he's given me in terms of what you have not done is insufficient for me to replace you. Do you want to try to work with him or assist him if he chooses to represent himself? That's the only question I need answered from you.

[*Defense Counsel*]: Your Honor, I'll do the best I can working with him. Somebody is going to have to work with him for sure.

*The Court*: In this courtroom I will not let him represent himself without the assistance of an attorney. So, if you want to be that man, you can be.

May I suggest this to you. I know that you're fully versed in the law. What you need to do is to listen to what he has to tell you and in turn not both of you talking at once. You tell him what your perspective is but be courteous enough to listen to what he's trying to tell you and I'm sure he'll do the same for you. [Emphasis added.]

At the arraignment's conclusion Brooks explained to the court, "I take psychotropic drugs because I'm bipolar. Sometimes people think because you take medication, they kind of give you a stigma and that's what I'm feeling from this individual that he feels that I'm mentally deficient in understanding what's going on." Judge Braxton observed that Brooks appeared "pretty smart in some aspects because you're smart enough to use five or six names to be deceptive."

After the arraignment, Brooks and appointed defense counsel attended a calendar conference and pretrial hearing conducted by Wayne Circuit Court Judge Daniel P. Ryan. Although Brooks complained that his attorney had withheld information and failed to file a

motion to sever the charges, Brooks did not voice a desire to proceed without counsel.

At a June 26, 2009 final pretrial conference, Brooks advised Judge Ryan that he had previously sought to represent himself, and "I would like to invoke--I would like the court to know that I wanted to invoke my right--inalienable rights secured by the constitution, but it seems like we get--" Judge Ryan interrupted Brooks, inquiring whether an August 10, 2009 trial date suited appointed counsel. At the conclusion of the conference, Judge Ryan revisited Brooks's self-representation motion and denied it, reasoning as follows:

> The defendant has not convinced the court that he's met the standards as required for self-representation as articulated in both state and federal case law. . . . [T]here are certain requirements that he needs to demonstrate to the court and he has not done so, including familiarity with the court rules, the rules of procedure, the rules of criminal procedure specifically, the rules of evidence as well as familiarity with the substantive law.
>
> . . . [A]lthough the defendant does have a right to self-representation, he only has the right if he meets certain criteria for the case law. So [defense counsel], you're still on the file unless he hires somebody else.[1]

Brooks then advised Judge Ryan that medical personnel at the Wayne County Jail refused to give him necessary psychotropic medications, and appealed for the court's intervention. Judge Ryan replied, "And we can add another reason why he . . . has not met the criteria for self-representation because he has not been receiving

---

[1] Although the prosecutor insists that Brooks merely mentioned his self-representation right "in the past tense," we construe Brooks's remarks in the same manner as did Judge Ryan: that Brooks sought to emphasize his continuing, ongoing quest to waive representation by counsel.

his medication." Judge Ryan continued that the lack of medication "impacts upon your ability as to making a decision as to whether you want to represent yourself."

When the jury trial began on August 17, 2009, Brooks asserted that defense counsel had been "forced upon [him] as attorney," contended that he had never been arraigned in the district court, and argued that his mental-health advocate should have participated in the selection of appointed defense counsel. "Point two," Brooks enumerated, "I was refused my constitutional right to represent myself by the court who, under the cover of law, attempted to cover these violations and due process of Constitutional Rights." When Judge Ryan asked Brooks if he would like to enter a plea instead of proceeding to trial, Brooks again complained that no one had as yet supplied his psychotropic medication. Judge Ryan continued:

> [B]ased upon my observation, there is absolutely nothing that indicates to me that there's anything wrong with you. You just gave a 15-minute, well-organized by paragraph one, two, three and four argument with reference to various different court rules, case law, federal statutes, federal constitutional provisions. There is absolutely nothing that would indicate to me that you have any issues at all here today. And, in fact, you were standing while you gave that whole presentation so . . . there's nothing that indicates . . . that there's anything physically wrong. You're coherent, you've got organized thoughts, you organized it by paragraph.

After a discussion about various evidentiary issues, Brooks presented the following inquiry:

> [*Brooks*]: . . . If . . . Your Honor feel [sic] that I'm coherent and I was able to address this, then . . . why I'm not able to represent myself to the jury?
>
> *The Court*: Because you don't have a firm grasp of all of the substantive rules of criminal law that apply. Although

your argument was well-organized, it does not reflect an understanding of what Michigan criminal law is . . . .

Brooks interrupted to ask nonsensical questions concerning whether Michigan is a state or a republic, and Judge Ryan answered, "The State of Michigan, both rules of procedure, rules of evidence and the substantive law which applies in this particular case, you've not demonstrated that you have that particular ability, and so [defense counsel] will represent you in this particular matter. Is there anything else?" Brooks posed further questions regarding the definition of "the State of Michigan" and whether a state court qualified as an "Article 1" court.

> *The Court*: See, the reason you're not representing yourself is that you're misdirected in your efforts. . . . You're more concerned about what the definition of the state is than what the crimes are which are currently pending before you, whether this is an Article 1 court or whether this is a state court.
>
> [*Brooks*]: Because this is a jurisdictional matter, and if I don't bring it up, Your Honor, then when it comes time for appeal, then . . . I'll have no recourse.
>
> *The Court*: And you know what? You're not going to be successful on your appeal. All right. Go ahead.

Before counsel delivered opening statements, Brooks propounded a query about other-acts evidence. Brooks believed that a federal rule of evidence governed the proceeding because he could not locate the corresponding Michigan rule. The court responded simply, "Which is why I didn't let you represent yourself."

Brooks eventually entered a nolo contendere plea to the charges arising from the November 2008 incident. During the plea colloquy, Brooks aired several grievances about his appointed attorney and complained that the court was "steady forcing me to represent him

[sic]." Brooks refused to sign his plea agreement while represented by appointed counsel, but agreed to proceed with the assistance of another attorney who serendipitously had appeared in the courtroom on an unrelated matter. Notably, Judge Ryan readdressed Brooks's claimed need for medication, informing Brooks that the jail doctor had confirmed "you're not being treated nor diagnosed for any psychiatric or psychological condition. . . . The doctor said there's absolutely no need for the medication. . . . [T]here's no evidence that there's a psychological issue."

At the sentencing hearing for the convictions, defense counsel announced that Brooks had refused to speak with him. Brooks reiterated his criticisms about his attorney's performance and challenged his counsel's appointment without the advice of his mental-health advocate. Brooks further complained that the jail had withheld his psychotropic medication throughout the proceedings. Brooks then recapped his desire for self-representation:

> Point two, I was refused my constitutional right by the court not to be able to represent myself. Even the court said he find [sic] that I'm quite coherent. And even though I would have took [sic] my chances, I still would have been able to probably ask more [sic] better questions, put up a better defense than the farce that this guy represented as my lawyer. I was refused my constitutional right under the current law and the court said that I couldn't represent myself, which was violation of my constitutional right, both state and federal.

Brooks later told Judge Ryan that he wanted to proceed *in propria persona* on appeal and asked how to obtain a copy of the lower-court file. Brooks raised the issue as follows a final time before Judge Ryan imposed sentence:

[*Brooks*]: I just want to know for the record why wasn't I allowed to represent myself?

*The Court*: Because [defense counsel] has a firm grasp on Michigan law, criminal law, Michigan Rules of Evidence and Michigan rules of procedure, which you did not demonstrate to the court that you possessed. Although you have obviously access to a lot of federal things, those are not necessarily the same rules of procedure that we apply. And you did not necessarily demonstrate an ability or competence in the substantive matter which was before the court .... [Y]ou did not necessarily meet the standard which would permit you to adequately represent yourself. ... [Y]ou're extremely bright, you're extremely intelligent, as you noted, you're extremely competent to handle your personal and business affairs, it does not necessarily mean that you're capable and competent of handling your criminal affairs, so [defense counsel] was your court-appointed attorney.

\* \* \*

There's [sic] cases out there ... which dictate the standard that I'm to apply in assessing a request for self-representation and you did not meet those criteria ....

On appeal, Brooks challenges the denial of his right to self-representation and the proportionality of his sentence.

## II. ANALYSIS

### A. SELF-REPRESENTATION PRINCIPLES

In relation to a defendant's waiver of the right to counsel and invocation of the right to self-representation, this Court reviews for clear error a trial court's findings of fact and de novo the trial court's application of legal and constitutional standards. *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004). Deprivation of a defendant's Sixth Amendment right of

self-representation constitutes a structural error demanding automatic reversal. *Neder v United States*, 527 US 1, 8; 119 S Ct 1827; 144 L Ed 2d 35 (1999), citing *McKaskle v Wiggins*, 465 US 168; 104 S Ct 944; 79 L Ed 2d 122 (1984).

In *Faretta v California*, 422 US 806, 814; 95 S Ct 2525; 45 L Ed 2d 562 (1975), the United States Supreme Court held that the Sixth Amendment implicitly embodies the right of self-representation in criminal proceedings.

> The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. . . . Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense. [*Id.* at 820-821.]

The Michigan Constitution explicitly protects a defendant's right to self-representation. Const 1963, art 1, § 13.[2] Our Legislature reinforced these dual constitutional protections by enacting MCL 763.1.[3]

The right to present one's own defense correlates with an equally fundamental right—the right to coun-

---

[2] The language in Const 1963, art 1, § 13 states, "A suitor in any court of this state has the right to prosecute or defend his suit, either in his own proper person or by an attorney."

[3] MCL 763.1 reads:

> On the trial of every indictment or other criminal accusation, the party accused shall be allowed to be heard by counsel and may defend himself, and he shall have a right to produce witnesses and proofs in his favor, and meet the witnesses who are produced against him face to face.

sel. *Faretta*, 422 US at 814. In balancing these two essential but potentially conflicting rights, a court must "indulge every reasonable presumption against waiver" of the right to counsel, and should not allow a defendant to proceed without counsel if any doubt casts a shadow on the waiver's validity. *People v Williams*, 470 Mich 634, 641; 683 NW2d 597 (2004) (quotation marks and citations omitted); *People v Adkins (After Remand)*, 452 Mich 702, 721, 727; 551 NW2d 108 (1996), criticized on other grounds in *Williams*, 470 Mich at 641 n 7.

To aid trial courts in ascertaining whether a defendant has knowingly, intelligently, and voluntarily relinquished the assistance of counsel, our court rules set forth guidelines for an effective waiver colloquy. According to the relevant portions of MCR 6.005(D):

> The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first
>
> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and
>
> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

This court rule embodies the notion that explicit elucidation of a defendant's comprehension of the risks he or she faces by representing himself or herself and the defendant's willingness to undertake those risks reduces the likelihood that a court will inaccurately presume an effective waiver of the right to counsel. If a defendant waives counsel, MCR 6.005(E) instructs that

> the record of each subsequent proceeding (e.g., preliminary examination, arraignment, proceedings leading to possible revocation of youthful trainee status, hearings, trial, or

sentencing) need show only that the court advised the defendant of the continuing right to a lawyer's assistance (at public expense if the defendant is indigent) and that the defendant waived that right. Before the court begins such proceedings,

(1) the defendant must reaffirm that a lawyer's assistance is not wanted; or

(2) if the defendant requests a lawyer and is financially unable to retain one, the court must appoint one; or

(3) if the defendant wants to retain a lawyer and has the financial ability to do so, the court must allow the defendant a reasonable opportunity to retain one.

### B. APPLICATION OF THE LEGAL PRINCIPLES

Each of Brooks's three entreaties to proceed *in propria persona* triggered the trial court's responsibility to "engage, on the record, in a methodical assessment of the wisdom of self-representation by the defendant." *Adkins*, 452 Mich at 721. Compliance with MCR 6.005(D) and (E) goes part of the way toward establishing that a defendant has knowingly and voluntarily waived counsel. In addition to conducting an inquiry substantially consistent with the court rules, a court must also determine that (1) the defendant's waiver of counsel is unequivocal, *People v Anderson*, 398 Mich 361, 366-367; 247 NW2d 857 (1976); (2) the defendant actually does understand the significance and consequences of self-representation, *Faretta*, 422 US at 835; and (3) self-representation will not "disrupt, unduly inconvenience, and burden the court and the administration of the court's business." *Russell*, 471 Mich at 190; *Anderson*, 398 Mich at 368. Clearly, " 'the more searching the inquiry at this stage the more likely it is that any decision on the part of the defendant is going to be truly voluntary . . . .' " *Adkins*, 452 Mich at 726 n

26, quoting *United States v McDowell*, 814 F2d 245, 252 (CA 6, 1987) (Engel, J., concurring).

The trial court failed to meaningfully assess the validity of Brooks's waiver of counsel. The record reveals that neither Judge Braxton nor Judge Ryan attempted to engage in the "methodical assessment of the wisdom of self-representation" dictated by the court rules. *Adkins*, 452 Mich at 721. Our Supreme Court has frequently reiterated that substantial compliance with the waiver-of-counsel procedures enumerated in MCR 6.005(D) amply safeguards constitutional standards, but we discern no indication that either judge even consulted the court rules before rejecting Brooks's self-representation request. Nor did either judge pursue a dialogue with Brooks testing the unequivocality or voluntariness of his waiver of counsel, or the knowing and understanding nature of Brooks's self-representation request.

Instead of following the brightly illuminated path paved by the court rules, Judge Braxton and Judge Ryan invoked Brooks's lack of legal ability as a ground for denying his requests for self-representation. Technical knowledge of legal matters simply has no relevance to an assessment of a knowing exercise of the right to self-representation. *Indiana v Edwards*, 554 US 164, 172; 128 S Ct 2379; 171 L Ed 2d 345 (2008). The United States Supreme Court made this point crystal clear in *Faretta*, 422 US at 836:

> We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on *voir dire*. For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself.

The Michigan Supreme Court echoed this sentiment in *Anderson*, 398 Mich at 368, explaining that a defendant's competence to waive counsel "does not refer to legal skills . . . ." Thus, Judge Ryan improperly denied self-representation on the basis of Brooks's inability to show "familiarity with the court rules, the rules of procedure, the rules of criminal procedure specifically, the rules of evidence as well as familiarity with the substantive law."

In summary, Judge Braxton and Judge Ryan contravened the court rules and the caselaw by failing to engage in an appropriate dialogue with Brooks before ruling on his assertion of his right to self-representation. Instead, both judges employed a universally repudiated legal-knowledge test. Contrary to Judge Ryan's ruling, Brooks's inability to display a "firm grasp of all of the substantive rules of criminal law that apply" simply could not serve as a ground for denying his right to represent himself.[4] Compelling a criminal defendant to demonstrate some level of mastery of court procedures and expert legal erudition effectively eviscerates the constitutional right of self-representation. Given that the denial of Brooks's right of self-representation amounts to a structural error, we vacate his jury trial conviction of entering without breaking with intent to commit a larceny and remand for a new trial. On retrial, we caution the trial court to carefully consider the applicable court rule and caselaw

---

[4] Once a court allows a defendant to proceed *in propria persona*, the defendant must abide by the court rules, rules of evidence, and other rules of procedure. *McKaskle*, 465 US at 173. A defendant's failure or refusal to behave responsibly in the courtroom may justify a trial court's decision to terminate self-representation. *Faretta*, 422 US at 834 n 46. However, our review of the record has uncovered no evidence that Judge Ryan found Brooks's conduct unduly disrupting, inconvenient, or burdensome.

criteria should Brooks again express a desire to waive counsel, and to make sufficient record findings to facilitate future review by this Court.

### C. BROOKS'S MENTAL COMPETENCE TO WAIVE COUNSEL

The prosecution contends that despite any error arising from the trial court's disregard of the court rules, Brooks lacked the mental capacity to make a knowing and intelligent decision to waive counsel. The prosecution theorizes that Brooks's frequent references to his unfulfilled need for psychotropic medication prove this point. We readily acknowledge that a court may deny self-representation where a defendant does not possess the requisite mental competence to handle the task.

> [T]he Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. That is to say, the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves. [*Edwards*, 554 US at 177-178.]

In *Edwards*, the United States Supreme Court distinguished between a defendant's competency to stand trial and his "mental capacity to conduct his trial defense" without counsel. *Id.* at 174. Recognizing "the complexity of the problem" presented by a competency determination, *id.* at 175, the Supreme Court proposed that the trial court "will often prove best able to make . . . fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant," *id.* at 177.

Given that Brooks tended to present somewhat irrelevant and confused arguments and insisted on his need for medication, the trial court legitimately questioned Brooks's competence to waive counsel. However, the court neglected to undertake any competency assessment. Specifically, the court never questioned whether Brooks was "competent" to stand trial, and failed to explore Brooks's competency to waive his right to counsel or to conduct his own defense. These distinct competency standards mandate differing inquiries. A defendant may not stand trial if his or her mental incapacity interferes with his or her "ability to consult with his lawyer . . . ." *Edwards*, 554 US at 170 (quotation marks, citation, and emphasis omitted). A defendant may not waive his or her right to counsel if his or her mental incompetency renders him or her unable to understand the proceeding and make a knowing, intelligent, and voluntary decision. *Godinez v Moran*, 509 US 389, 401 n 12; 113 S Ct 2680; 125 L Ed 2d 321 (1993); *Faretta*, 422 US at 835; *Anderson*, 398 Mich at 368. Yet, "[i]n certain instances an individual may well be able to satisfy [the] mental competence standard [to stand trial], for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel." *Edwards*, 554 US at 175-176. The Supreme Court acknowledged that "[d]isorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities, anxiety, and other common symptoms of severe mental illnesses can impair the defendant's ability to play the significantly expanded role required for self-representation even if he can play the lesser role of represented defendant." *Id.* at 176 (quotation marks and citation omitted). The record contains no hint that the trial court recognized these critical distinctions or endeav-

ored to engage in an inquiry intended to meaningfully acquaint itself with any aspect of Brooks's competency at the time of trial.

Moreover, the trial court expressed inconsistent and fundamentally contradictory findings regarding Brooks's mental competency. At the June 26, 2009 pretrial conference, the court stated that Brooks's inability to take his psychotropic medications "impact[ed] his] ability as to making a decision as to whether [he] want[ed] to represent [him]self." This statement potentially could have supported a finding that Brooks did not have the requisite competence to knowingly, intelligently, and voluntarily waive his right to counsel.[5] Yet at trial, the court rejected Brooks's complaint that jail medical personnel had improperly withheld his medication, opining that Brooks appeared organized and coherent, and did not require psychotropic medications. And when the trial court finally pursued information relevant to Brooks's mental capacity, it found that "there's absolutely no need for the medication." The court stated, [T]here's no evidence that there's a psychological issue." Nothing in the record suggests that Brooks was severely mentally ill, as was the defendant in *Edwards*, or that Brooks was only borderline competent or was incompetent to waive counsel. By the time of sentencing, the court's earlier concerns about Brooks's mental capacity to offer an unequivocal, knowing, intelligent, and voluntary waiver had apparently evaporated. Consequently, we reject that the trial court properly denied self-representation on the basis of Brooks's alleged mental incapacity.

---

[5] We note that Judge Ryan reached this conclusion without the benefit of consultation with any mental health professionals. Judge Ryan did not learn until the sentencing phase that jail medical personnel had denied Brooks's request for psychotropic medication because the jail doctor determined that Brooks suffered from no mental infirmity.

III. SENTENCING DEPARTURE

Brooks also challenges the trial court's reliance on an incorrect sentencing grid and the court's decision to depart from the guidelines range and impose a life sentence for the entering without breaking with intent to commit larceny conviction stemming from the September 2008 incident. Notwithstanding that we are reversing Brooks's conviction, we analyze the sentencing issue to prevent further error on remand.

The prosecution concedes that the trial court incorrectly identified Brooks's conviction as the class D offense of breaking and entering. The jury actually convicted Brooks of entering without breaking, a class E offense. Brooks has a total prior record variable (PRV) score of 100, placing him in PRV level F, and he has a total offense variable (OV) score of 6, placing him in OV level I. The recommended minimum sentencing guidelines range for a fourth-offense habitual offender for a class E offense in the F-I cell is 9 to 46 months. This recommended minimum sentence range falls within a "straddle cell."

> When the upper and lower limits of the recommended minimum sentence range meet certain criteria, a defendant is eligible for an intermediate sanction. If the upper limit of the minimum sentence range exceeds 18 months and the lower limit is 12 months or less, the defendant's sentence range is in a "straddle cell." When the range is in a straddle cell, the sentencing court may elect either to sentence the defendant to a prison term with the minimum portion of the indeterminate sentence within the guidelines range or to impose an intermediate sanction, absent a departure. [*People v Harper*, 479 Mich 599, 617; 739 NW2d 523 (2007).]

MCL 769.31 governs the imposition of a sentence for straddle cells and provides the following relevant definitions:

(a) "Departure" means a sentence imposed that is not within the appropriate minimum sentence range . . . .

(b) "Intermediate sanction" means probation or any sanction, other than imprisonment in a state prison or state reformatory, that may lawfully be imposed.

The statute enumerates a nonexhaustive list of intermediate sanctions, including mental health treatment. MCL 769.31(b)(*vi*).

Here, the trial court declined to impose an intermediate sanction or a minimum sentence within the guidelines range. Rather, the court imposed a life sentence because Brooks was a "career criminal" and the time had come for him to "retire." The court noted that Brooks had 12 prior felony and three prior misdemeanors convictions dating back to 1982. The court characterized Brooks as an "Habitual 12, well beyond Habitual 4." In relation to Brooks's recidivist behavior, the court stated, "Every time you are released and are in society, you commit another felony." The court additionally cited the fact that Brooks had been on parole when he committed the instant offenses.

MCL 769.34(3) affords the trial court discretion to depart from the minimum sentencing guidelines range "if the court has a substantial and compelling reason for that departure and states on the record the reasons for departure." A court should only find reason to depart from the recommended sentence in "exceptional cases." *People v Babcock*, 469 Mich 247, 257; 666 NW2d 231 (2003) (quotation marks and citation omitted). The court must rely on factors that are "objective and verifiable" and that "keenly or irresistibly grab [the court's] attention . . . ." *Id.* (quotation marks and citation omitted). The factors also must be "of considerable worth in deciding the length of a sentence." *Id.* (quotation marks and citation omitted). The court may only

base its departure "on an offense characteristic or offender characteristic already taken into account" in the sentencing guideline variables if "the characteristic has been given inadequate or disproportionate weight." MCL 769.34(3)(b). Moreover, the particular sentence imposed must qualify as proportionate to the specific defendant's conduct and criminal history. *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008).

We review for clear error the trial court's reasons for imposing an upward departure, but consider de novo whether the reasons are objective and verifiable. We review for an abuse of discretion the court's view that substantial and compelling reasons justify a departure. We also review for an abuse of discretion the court's ruling that a particular sentence is proportionate to the crime and the offender. "A trial court abuses its discretion if the minimum sentence imposed falls outside the range of principled outcomes." *Id.*

The PRVs took into account Brooks's "career of crime," but the trial court believed that the guidelines afforded this characteristic inadequate weight. Brooks had committed a total of 12 prior felonies. In light of Brooks's felony convictions, he scored 50 points for PRV 1 (a defendant with two high-severity felony convictions) and 30 points for PRV 2 (a defendant with four or more low-severity felony convictions). Brooks's three prior misdemeanor convictions formed the basis for his PRV 5 score of 10 points (a defendant with three or four misdemeanor convictions), and his status as a parolee when he committed the current offense dictated his score of 10 points for PRV 6 (offender's relationship to the criminal justice system).

It seems that 6 of Brooks's 10 prior low-severity felony convictions received inadequate weight or consideration in the guidelines because they could not

further increase Brooks's score for PRV 2. When calculating PRV 2, a court scores a defendant 10 points for two prior low-severity felony convictions and an additional 10 points each for a third and fourth conviction. If the Legislature had authorized a court to continue scoring in that pattern, the trial court could have scored PRV 2 at 90 points, giving Brooks a total PRV score of 160. However, the addition of 60 points to Brooks's total PRV score would not have altered his sentence because Brooks already had reached the highest category of repeat offenders—PRV level F.[6]

The extent of Brooks's criminal history and recidivist behavior constitutes an objective and verifiable fact. The court could easily determine from the sentencing information report that Brooks had rapidly committed new criminal offenses on his release from prison for prior offenses. It is well established that a court may consider a defendant's past criminal history and failures at rehabilitation as objective and verifiable factors establishing "a firm probability of future" criminal activity. *People v Horn*, 279 Mich App 31, 45; 755 NW2d 212 (2008); *People v Solmonson*, 261 Mich App 657, 671; 683 NW2d 761 (2004). The excessive number of criminal convictions in this case "keenly or irresistibly grab[s one's] attention" and is of "considerable worth" in fashioning Brooks's sentence for his current offense. *Babcock*, 469 Mich at 257 (quotation marks and citation omitted). We also agree with the trial court that the guidelines afforded inadequate weight to Brooks's recidivist behavior. Scoring 160 points to more accurately portray the extent of Brooks's criminal history, his PRV

---

[6] In *Smith*, 482 Mich at 306, the Supreme Court observed that a court could justify a particular upward departure by placing "the specific facts of a defendant's crimes in the sentencing grid."

score would reach more than double the highest PRV score considered in the guidelines.

Nevertheless, the trial court abused its discretion by imposing a life sentence for an offense that otherwise warranted a minimum sentence of less than four years. The legislative sentencing guidelines reserve life sentences for murder convictions and class A felonies. Even within class A, which contains the highest severity felonies, only defendants with the highest combinations of OV and PRV scores merit life sentences. To the contrary, for a class E felony the highest possible minimum sentence equals 76 months, or six years and four months. A life sentence falls outside the range of principled outcomes, even for a repeat offender, where the current charge essentially amounted to trespassing. In the event that Brooks is convicted of entering without breaking on retrial, we caution the trial court to impose a proportionate sentence that takes into consideration the offender and the offense.

We vacate Brooks's conviction and sentence for entering without breaking with the intent to commit larceny arising from the September 2008 incident and remand for a new trial consistent with this opinion. We do not retain jurisdiction.

TALBOT, P.J., and HOEKSTRA, J., concurred with GLEICHER, J.