*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* ECD.

BAILEY VANDERWEEL,

Petitioner-Appellee,

v

ECD, also known as YEHG, also known as YECD,

Respondent-Appellant.

UNPUBLISHED
August 25, 2025
12:42 PM

No. 371227
Washtenaw Probate Court
LC No. 24-000337-MI

Before: BOONSTRA, P.J., and LETICA and RICK, JJ.

PER CURIAM.

In this civil-commitment action, respondent appeals as of right an order for involuntary mental-health treatment. We reverse and remand for further proceedings.

## I. FACTUAL BACKGROUND

Respondent's appeal stems from a petition for involuntary mental health treatment filed by petitioner, a social worker. Petitioner alleged that respondent displayed various signs of psychosis: she actively and inappropriately responded to internal stimuli. She accused petitioner of being a spy. Respondent directed petitioner not to talk to strangers. Finally, respondent refused to disclose identifying information required for her case. In light of the foregoing, petitioner concluded that respondent suffered from mental illness. She believed respondent could reasonably be expected to harm herself or others, could not attend to her own basic needs, and did not understand her need for treatment.

Petitioner additionally submitted two reports from psychiatrists who had examined respondent. The medical experts agreed with petitioner regarding respondent's need for involuntary mental health treatment. The probate court additionally ordered Washtenaw County Community Mental Health (WCCMH) to prepare a report on alternative mental-health treatment for respondent. The report disclosed that respondent was hospitalized after creating a disturbance

-1-

at a McDonald's restaurant and had not been "forthcoming or willing to take medications for her obvious mental health condition." Accordingly, the WCCMH recommended respondent participate in 60 days of inpatient treatment.

At the petition hearing, respondent's court-appointed counsel advised the probate court that she had had multiple conversations with respondent and that respondent had fired her. Appointed counsel explained that respondent claimed to be an attorney and that she either wanted to represent herself or have a male attorney represent her. Appointed counsel also stated that respondent wanted an adjournment[1] and to correct her name for the record.[2] Appointed counsel further explained that respondent wished to be present for the hearing, which counsel opined that would be satisfied via Zoom.[3]

Petitioner had no objection to respondent's adjournment request. At that point, the court noted that respondent was not yet present at the hearing due to difficulties connecting to audio at the hospital. Respondent appeared after the technical issues were resolved. When the court addressed respondent by the name reflected in its file, respondent said that she had not yet told the court what her name was. Thereafter, respondent said her name was "Yahweh."[4] When the court asked whether respondent was also known by the name on the petition, respondent denied that she was ever known by that name.[5]

The court explained that the case was set for a mental health hearing, adding that it had appointed counsel for respondent. Respondent's attorney informed respondent that she had shared with the court respondent's desire to represent herself or have a male attorney represent her. Appointed counsel added that she had also informed the court about respondent's request for an adjournment and to correct her name for the record.

Asked whether counsel's representations were accurate, respondent said that she wanted an adjournment and was representing herself. Respondent also said that she wanted a new judge

---

[1] "A hearing may be adjourned only for good cause. The reason for an adjournment must be submitted in writing to the court and to the opposing attorney or stated on the record." MCR 5.735.

[2] From the record provided in this case, it is unclear what respondent's actual name is because various names are included; however, the register of actions references a related adult guardianship case for respondent. Taking judicial notice of the register of actions in the guardianship case, MRE 201, reveals that respondent's true name differs from the one included in the file and the one she provided to the court during the hearing.

[3] Absent certain circumstances not relevant to this case, MCL 330.1455(1) mandates that "[t]he subject of a petition has the right to be present at all hearings." And, even though the court rules provide for videoconferencing, see MCR 2.407 and MCR 2.408, a participant may request "to physically appear in person for any proceeding." MCR 2.407(B)(4). Once such a request is made, "the presiding judge and any attorney of record for said participant must appear in person with the participant for said proceeding." Id.

[4] Yahweh is another name for God.

[5] See footnote 3. At that time, the adult guardianship case had not been opened.

before stating that she did not need a new judge. The court asked whether respondent had been to law school and she replied:

> [O]f course I have done this. Do you know what Yahweh means? Yahweh. So yes I have been to law school. What I need, is I need access to—I would like access to the legal library so I can plan to represent myself in this case."

When the court asked what law school respondent had attended, she scolded the court, saying that it did not "need to question [her] like that." Respondent repeated that she wanted a different attorney before she corrected herself and stated that she wanted a different judge.

The court explained that it needed more information about respondent's educational background before it could decide whether respondent should represent herself. The court again asked whether respondent had attended law school. Respondent said: "Yes, I have been to law school, but it has not been on this planet." Asked when she attended law school, respondent answered: "Before this time existed." Asked to identify the law school she had attended, respondent replied that the court would not "know the name of it." The court again asked what law school respondent had attended and she answered that she "did" and "fully plan[ned] to represent" herself.

The court then advised respondent that petitioner was "represented by a very capable attorney" and asked respondent if she had read the Michigan Court Rules. This led to the following exchange:

> [*Respondent*]: Well, I will say this, that I know and I do say I have not— they have not—I will just say that they have not given me what I needed until— just—I can fully represent myself, and I fully—and I understand and I know all what I need to do, and I am fully capable of representing myself in this case.

> *The Court*: So, I need to make that determination. I need [to] know if you have read the Michigan Court Rules and the Michigan Rules of Evidence.

> [*Respondent*]: Yes.

The court asked if respondent knew that it had to follow those rules and apply the law equally, and respondent said that she did.

The court then advised respondent that it might not be wise for her to represent herself, especially if she was suffering from a disability or was not a licensed attorney familiar with this type of proceeding. The court further informed respondent that petitioner was requesting that she be hospitalized for up to 60 days, followed by up to 180 days of outpatient treatment, including bloodwork, imaging, and medication.[6] Noting that respondent had not disclosed the name of the

---

[6] MCL 330.1472a(1) provides:

law school she had attended or when she had graduated, the court asked respondent whether she wanted another attorney appointed to represent her or whether she wanted to represent herself, "even though it may be unwise [for her] to do so." Respondent again affirmed that she wanted to represent herself. The court again inquired about whether respondent would rather represent herself than have a different attorney appointed and respondent reaffirmed her choice to represent herself.

After explaining that it would appoint respondent's counsel to serve as standby counsel for respondent, the court referred to respondent using the last name reflected in the file and asked whether she understood that it was appointing standby counsel. Respondent replied, "I—please do not call me [that]. I'm sorry. That is—I'm trying not to be insulted . . . . I cannot be called that." Respondent stated her name, using two names typically used to refer to God.[7] She then asked the court to call her by another series of names traditionally used to refer to God, adding that "they should all be uppercase." Respondent then engaged in a lengthy exchange with the court about her name as reflected in the record. Respondent stated that she wanted to be called by the name she had given, and said that she was "not pleased with this Zoom meeting thing . . . ." Respondent spelled her name for the record aloud, adding another name typically used to refer to God, again insisting that "it needs to be all capital letters. . . ." The court agreed to address respondent by the name she had said was her last name.[8] Respondent began to interject; however, the court advised her that it was going to proceed with the hearing.

Petitioner called Dr. Renee L. Bayer, one of the psychiatrists who had submitted a report in support of the petition. After eliciting testimony about her qualifications, petitioner moved to have Dr. Bayer qualified as an expert in the field of psychiatry. The probate court asked respondent if she had an objection to Dr. Bayer's qualifications. Respondent stated that she wanted to "fire her doctor" and that she needed to "get to a library" in order to represent herself. The court again asked respondent if she had any objection to Dr. Bayer being qualified as an expert witness.

---

Upon the filing of a petition under [MCL 330.1434] and a finding that an individual is a person requiring treatment, the court shall issue an initial order of involuntary mental health treatment that shall be limited in duration as follows:

(a) An initial order of hospitalization shall not exceed 60 days.

(b) An initial order of assisted outpatient treatment shall not exceed 180 days.

(c) An initial order of combined hospitalization and assisted outpatient treatment shall not exceed 180 days. The hospitalization portion of the initial order shall not exceed 60 days.

[7] See footnote 3.

[8] MCR 1.109(D)(9) permits parties to include "Ms., Mr., or Mx. as a preferred form of address and one of the following personal pronouns in the name section of the caption [of their case]: he/him/his, she/her/hers, or they/them/theirs." Courts are required to "use the individual's name, the designated salutation or personal pronouns, or other respectful means that are not inconsistent with the individual's designated salutation, or personal pronouns when addressing, referring to, or identifying the party or attorney, either orally or in writing." *Id*.

Respondent stated that she did not need to be there, that she was there for her name, and that her name was the most important thing to her. Standby counsel then interrupted and told the probate court that she did not believe respondent understood that a hearing was occurring. Respondent disagreed:

> I do understand. No, I do understand. I do understand. What I'm saying is I am also an expert in this field . . . . I am here for a lot more than—my name is the most important thing, and I know that there is—I just—I know all about this, so. It's that name that I'm protecting, that I need most, that I'm willing. It is my name. I'm willing to die for that name. So that is—and I have a lot more that I do. So that is of utmost importance, and I am representing myself because I'm fully capable. I am definitely an attorney. So I'm going to—yes, I definitely am.

While Dr. Bayer was testifying, respondent interrupted and said that she did not want Dr. Bayer as her doctor and that Dr. Bayer should not be practicing. After the court explained that respondent had not made a legal objection, respondent claimed to know that and stated that she had a legal objection to raise, namely that Dr. Bayer repeatedly threatened to kill her with medication. The court overruled respondent's objection.

Dr. Bayer opined that respondent had a mood disorder "with a delusion that she is God." Respondent was sleeping only a few hours each night, but had increased energy. Respondent suffered from disorganized speech and behavior as well as paranoia. Respondent believed that she had a special power, that she could read Dr. Bayer's mind, and believed that Dr. Bayer planned to kill her. Respondent appeared to have bipolar disorder as well as auditory and visual hallucinations. Respondent admitted to hearing "all voices of all people of the world. . . ." Dr. Bayer opined that the statutory requirements for involuntary mental health treatment were satisfied.

After petitioner finished questioning Dr. Bayer, the court explained that this was respondent's opportunity to question her. Respondent said that "all of that is inappropriate," and that she was "totally objecting to this doctor." Moreover, it was "just proof that [she] did not need to be here, . . . but [she was] fully going to represent herself and take care of this because [she] care[d] about that need. . . ."

When given an opportunity to testify, respondent did not address the merits of the concerns about her mental well-being. Instead, she continued to fixate on her name, its importance to her, and its perceived relation to God and religion. Respondent said that she planned to represent herself because she had "never been anything that that doctor says." Rather, respondent maintained that she was "highly capable" of caring for herself. In closing, respondent complained about the Zoom meeting, stating that she could not even hear; however, respondent knew that she was representing herself.

Following respondent's testimony, the court found clear and convincing evidence that respondent's mental health issues required treatment. The court opined that respondent was a danger to herself and others, could not attend to her own basic needs, lacked an understanding of her need for treatment, and was unwilling to engage in treatment. Consequently, the court granted

the petition and entered an order authorizing up to 60 days of inpatient treatment followed by outpatient treatment for no more than 180 days.

After the court announced its judgment, the following exchange occurred:

> [*Respondent*]: No, no, excuse me. We're not done here. We're not done here. I am not—I fully expect this case is to—I want this to go to trial,[9] and I am definitely able to represent myself.
>
> *The Court*: Well, this was the hearing, and you represented yourself.
>
> [*Respondent*]: No, I—hello. I—you just said if I need my—I—no. I need a different—this is not ever—no. This is not okay because I said I wanted to file an injunction to stop this hearing so that I could be my own lawyer, and if I need—you know what? I will—I know that I need to get—I know I would like a different attorney appointed to me because I need to actually get to the—I—and I represent myself, and this is—I'm not staying here. So I—what I am doing is I am—I need that name. So I—this is—I'm not satisfied with this.
>
> *The Court*: Okay, well, you do have your appellate rights. That concludes this hearing.
>
> [*Respondent*]: No, no. I am not done here at all.

This appeal followed.

## II. ANALYSIS

Respondent argues that the probate court erred by allowing her to act as her own legal counsel despite clear and convincing evidence that she was not competent to do so.[10] Under the

---

[9] Respondent had the right to a jury trial, MCL 330.1458 and MCR 5.740, but failed to timely request one. *In re MAT*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369255); slip op at 9.

[10] Petitioner asserts that it is unclear whether respondent is arguing that she was not competent to waive her right to legal counsel, is conflating the legal definitions of competency and a person requiring involuntary mental health treatment, or is arguing that she was not competent to stand trial. If respondent is arguing that she was not competent to waive her right to counsel, petitioner contends that respondent's waiver was "knowingly and understandingly made." If respondent is arguing that she could not represent herself because she was subsequently found to be a person requiring treatment, there was no supporting legal authority for such a rule. We agree that a court may determine that an individual who is the subject of an involuntary commitment proceeding is competent to waive their right to an attorney. Regarding the suggestion that respondent was not competent to stand trial, petitioner argues that the definition of competency applied in criminal cases, MCL 330.2020(1), is inapplicable to mental health proceedings where treatment is being

-6-

circumstances presented in this case, we conclude that the probate court abused its discretion when it permitted respondent to represent herself.

"[T]his Court reviews for an abuse of discretion a probate court's dispositional rulings and reviews for clear error the factual findings underlying a probate court's decision. A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *In re Tchakarova*, 328 Mich App 172, 182; 936 NW2d 863 (2019) (quotation marks and citation omitted). "A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id.* (quotation marks and citation omitted). Issues of constitutional law are reviewed de novo. *In re Londowski*, 340 Mich App 495, 504; 986 NW2d 659 (2022). This Court likewise reviews de novo issues pertaining to statutory interpretation. *In re Tchakarova*, 328 Mich App at 182.

As an initial matter, we note that whether respondent was competent to represent herself at trial has become a moot issue. "[A] case becomes moot when an event occurs that makes it impossible for a reviewing court to grant relief." *In re Detmer/Beaudry*, 321 Mich App 49, 56; 910 NW2d 318 (2017). "Stated differently, a case is moot when it presents nothing but abstract questions of law which do not rest upon existing facts or rights." *Id.* (quotation marks and citation omitted). "When no such collateral legal consequences exist, and there is no possible relief that a court could provide, the case is moot and should ordinarily be dismissed without reaching the underlying merits." *Id.* The order for involuntary mental health treatment at issue here has since expired, suggesting that there is no relief that we can offer to respondent at this juncture.

However, "[w]hen a case presents an issue of public significance, and disputes involving the issue are likely to recur, yet evade judicial review, courts have held that it is appropriate to reach the merits of the issue even when the case is otherwise moot." *Id.* This issue is one of public significance because involuntary inpatient treatment "constitutes a significant deprivation of liberty that requires due process protection." *Londowski*, 340 Mich App at 507 (quotation marks and citation omitted). Disputes involving the right to counsel in civil-commitment hearings are also likely to recur given that every individual subject to a civil-commitment proceeding has a right to counsel. *Id.* at 513. Additionally, the subject order in this case could not exceed 180 days, MCL 330.1472a(1)(c), making disputes involving similar orders highly likely to evade judicial review. For these reasons, we will address the matter as though it was not moot.

Respondent argues that the probate court erred by allowing her to represent herself because she was not competent to do so. "It is clear that a person who is the subject of a petition for involuntary mental-health treatment has a statutory right to be represented by counsel." *Londowski*, 340 Mich App at 504; see also MCL 330.1454(1) (stating that that "[e]very individual who is the subject of a petition is entitled to be represented by legal counsel"). A respondent subject to mental-health proceedings in probate court may waive their right to appointed counsel

---

requested precisely "because a respondent is *not* aware of their present reality." Petitioner is correct: because the language of MCL 330.2020 is limited to criminal proceedings, it does not apply in this mental health proceeding.

"only in open court and after consultation with an attorney." MCR 5.732(C).[11] If it appears that the waiver was not "voluntarily and understandingly made," the court may not accept it. *Id*. Further, if the respondent waives their right to an attorney, "the court may appoint a guardian ad litem for the individual." *Id*.

In a family court case charging two children with the non-criminal, status offense of truancy, this Court determined that the children had the right to counsel under MCL 712A.17c and MCR 3.915(A). *In re EE*, 346 Mich App 332, 348; 12 NW3d 86 (2023). Although recognizing that the Sixth Amendment right to counsel applicable to criminal proceedings did not apply,[12] this Court held that "the jurisprudence concerning self-representation in criminal cases" informed its analysis. *Id*. This Court ruled that, even where the right to counsel arises from a statute and court rule, a court ruling on waiver of the right to counsel must "indulge every reasonable presumption against waiver" and should not allow a party "to proceed pro se if any doubt casts a shadow on the waiver's validity." *Id*. (quotation marks and citation omitted).

There are "three 'requirements' that must be met before a court grants a criminal defendant's request for self-representation." *Id*. at 350, quoting *People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976). "First, the request must be unequivocal." *Anderson*, 398 Mich at 367. This "protects an accused from the consequences of a poorly considered or inadvertent waiver of a right to counsel, and it aids the court in discerning the accused's intent and protecting the right." *In re EE*, 346 Mich App at 349.

Next, the "court must determine whether defendant is asserting his right knowingly, intelligently and voluntarily."[13] *Anderson*, 398 Mich at 368. To do so, the court "must make the

---

[11] But see MCL 330.1454(3), which provides: "If, after consultation with appointed counsel, the subject of a petition desires to waive [their] right to counsel, [they] may do so by notifying the court in writing."

[12] Because the issue was not raised or addressed by the parties, this Court also did not decide the question of whether the children had the right to counsel under the Due Process Clauses of either the United States or Michigan Constitutions. *In re EE*, 346 Mich App at 348.

[13] Petitioner argues that "the bar for accepting a waiver of counsel in a mental health proceeding is lower than in criminal cases, and thus the requirements of *Anderson* are not likely applicable." In support of this argument, petitioner notes that, unlike a defendant in a criminal proceeding, MCL 330.1454(3) permits a respondent in a mental health proceeding to waive their right to counsel in writing. Moreover, petitioner contends that, under *Anderson*, 398 Mich at 368, a criminal defendant's waiver must be "knowingly, intelligently and voluntarily" made, while under MCR 5.732(C), a respondent in a mental health proceeding must waive counsel "voluntarily and understandingly." The court rules are clear that "[u]nless a statute or court rule requires that a waiver be made by the individual personally and on the record, a waiver may be in writing signed by the individual, witnessed by the individual's attorney, and filed with the court." MCR 5.737. Because MCR 5.732(C) permits a respondent to "waive an attorney only in open court and after consultation with an attorney," a respondent's written waiver under MCL 330.1454(3) alone is insufficient. See MCR 5.737. Further, this Court has previously concluded that the requirements

[p]ro se defendant aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id*. In making this determination, a "[d]efendant's competence is a pertinent consideration. . . ." *Id*. "But his competence does not refer to legal skills[.]" *Id*. An individual seeking to waive their right to counsel and represent themselves must be mentally competent to do so, and "may not waive [their] right to counsel if [their] mental incompetency renders [them] unable to understand the proceeding and make a knowing, intelligent, and voluntary decision." *People v Brooks*, 293 Mich App 525, 542; 809 NW2d 644 (2011), vacated in part on other grounds 490 Mich 993 (2012). "[D]isorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities, anxiety and other common symptoms of severe mental illnesses can impair the defendant's ability to play the significantly expanded role required for self-representation even if he can play the lesser role of represented defendant." *Id*. (quotation marks and citation omitted).

"The third and final requirement is that the trial judge determine that the defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business." *Anderson*, 398 Mich at 368. Importantly, these three requirements "support the imperative that . . . adjudications must proceed in an orderly fashion and result in trustworthy . . . determinations." *Id*.

Before the scheduled hearing in this matter, the court received reports from two psychiatrists opining that respondent required inpatient mental-health treatment because she was delusional and suffered from an unspecified psychotic disorder. The psychiatrists further agreed that "as a result of that mental illness," respondent could "reasonably be expected within the near future to intentionally or unintentionally seriously physically injure" herself or others and was unable to attend to her basic physical needs. They also agreed that respondent's "judgment [was] . . . impaired by mental illness," and her "lack of understanding of the need for treatment ha[d] caused . . . her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary . . . to prevent a relapse or harmful deterioration of . . . her condition[.]" The psychiatrists supported their conclusions based on their personal evaluations, opining that respondent was paranoid, had disorganized thoughts, responded to internal stimuli, experienced elevated moods, believed she was God, was sometimes catatonic, and verbalized that she did not need medication or to be in the hospital.

There is no doubt that respondent insisted on representing herself at the hearing. Therefore, the probate court's task was to determine whether respondent's waiver of her right to counsel was voluntarily and understandingly made. The court endeavored to make that determination by asking a series of questions pertaining to respondent's education and purported status as a lawyer, as well as explaining the dangers of self-representation in light of the potential consequences. Even so, the court never explicitly determined that respondent's waiver was voluntarily and understandingly

---

in *Anderson*, including a waiver made "knowingly, intelligently and voluntarily" "dovetail with" the language in MCR 3.915(A)(3) and MCL 712A.17c(3), requiring that a juvenile's waiver of counsel be "voluntarily and understandingly made." *In re EE*, 346 Mich App at 350.

made. MCR 5.732(C). Instead, it implicitly made that determination by allowing her to proceed pro se with standby counsel.

As already discussed, whether respondent was competent was critical to the court's determination that she understandingly and voluntarily waived her right to counsel. See e.g., *Anderson*, 398 Mich at 368; *Brooks*, 293 Mich App at 542. We recognize that this required the court to consider respondent's competency to waive her right to counsel before it addressed whether involuntary mental health treatment was statutorily authorized.

During the hearing, respondent, suggesting that she was God, told the court that she was an attorney, who had attended law school on another planet, "[b]efore this time existed." At the same time, respondent seemed fixated on correcting the name that appeared on the record to reflect numerous names for God. Respondent's statements and beliefs evidenced profound mental illness that affected her ability to comprehend reality. *Brooks*, 293 Mich App at 542. Stated otherwise, the symptoms arising from respondent's mental illness impaired her "ability to play the significantly expanded role required for self-representation even if [she could] play the lesser role of [a] represented [respondent]." *Id.* (quotation marks and citation omitted).

In sum, it is eminently clear to us that a person who verbalizes that she is God and went to law school on another planet before this time began is not competent to waive her right to counsel or represent herself. Thus, the probate court abused its discretion by accepting respondent's waiver of her right to counsel, MCR 5.732(C), and allowing respondent to represent herself. The presence of standby counsel did not remedy the probate court's error, *In re EE*, 346 Mich App at 352, and depriving respondent of her right to counsel "seriously affected the fairness and integrity of the proceedings, necessitating reversal."[14] *Id.*

---

[14] Although the parties address this issue as being unpreserved, over three months after *In re EE* was decided, our Supreme Court held that the forfeiture doctrine does not apply in a criminal proceeding "[w]here a self-represented defendant fails to object when the trial court fails to obtain a valid waiver of the right to counsel." See *People v King*, 512 Mich 1, 4; 999 NW2d 670 (2023). Instead, "[a]bsent a [criminal] defendant's valid waiver of their right to counsel, deprivation of counsel during critical stages of the criminal proceedings is a structural error subject to automatic reversal, even when a defendant formally requests to represent themselves." *Id.* Because respondent is entitled to relief under the plain-error standard, we need not determine whether *King*'s analysis should be applied in this civil proceeding.

Reversed and remanded for further proceedings consistent with this opinion.[15]  We do not retain jurisdiction.

/s/ Anica Letica
/s/ Michelle M. Rick

---

[15] We recognize that respondent remains under the probate court's jurisdiction as the result of subsequent unchallenged involuntary commitment orders, but note that the challenged involuntary commitment order at issue here was entered on the Law Enforcement Information Network (LEIN) and that it may be removed "only upon receipt of a subsequent court order for that removal." MCL 333.1464a(1).  See also MCL 333.1464a(2) ("The department of state police shall immediately . . . remove an order from the law enforcement information network as ordered by the court under this section.").  On remand, the probate court shall enter an order removing the LEIN entry related to its May 1, 2024 initial order after hearing on petition for mental health treatment.