# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTHONY LEWIS MCCRORY,

Defendant-Appellant.

UNPUBLISHED
September 22, 2015

No. 311205
St. Clair Circuit Court
LC No. 11-002928-FH

Before: GADOLA, P.J., and JANSEN and BECKERING, JJ.

PER CURIAM.

A jury convicted defendant, Anthony Lewis McCrory, of aggravated stalking, MCL 750.411i, and the trial court sentenced him as a fourth habitual offender, MCL 769.12, to a prison term of 46 months to 25 years. Defendant appeals his conviction as of right. While the appeal was pending, this Court granted defendant's motion to remand to allow defendant to move for resentencing.[1] On remand, the trial court resentenced defendant, again as a fourth habitual offender to an identical prison term of 46 months to 25 years.[2] We vacate defendant's conviction and sentence and remand for a new trial.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The dispositive issue in this case surrounds defendant's request for self-representation. In this regard, we note that three appointed attorneys discontinued representation of defendant because they were unable to work with him. The first withdrew, with defendant's blessing, at the time of the arraignment because defendant would not cooperate with him. At the time the

---

[1] *People v McCrory,* unpublished order of the Court of Appeals, entered December 27, 2013 (Docket No. 311205).

[2] Defendant originally filed an appeal as of right concerning his resentencing; the case was assigned to Docket No. 321452, and we consolidated the matter with the instant appeal. Defendant subsequently moved to dismiss his appeal in Docket No. 321452. On September 8, 2015, we vacated the previous consolidation and dismissed the appeal in Docket No. 321452. *People v McCrory*, unpublished order of the Court of Appeals, entered September 8, 2015 (Docket No. 321452).

second attorney withdrew, again at defendant's request, the trial court judge recused himself, given his past experiences with defendant. Defendant proceeded with a third appointed attorney for a period of time, but eventually, asked that attorney to withdraw as well. Five days before trial was scheduled to begin, at a hearing on this third attorney's motion to withdraw, the trial court engaged in a colloquy with defendant in which defendant asserted his right to self-representation. The entire exchange is as follows:

> THE COURT: Give me a moment. I'm talking about the Motion to Withdraw as Counsel. What do you have to say about that?
>
> Is, is what [trial counsel] says is [sic] true?
>
> THE DEFENDANT: Yes. It [is] true. I'd like to represent myself.
>
> THE COURT: Okay.
>
> THE DEFENDANT: Like to represent myself.
>
> THE COURT: What I am going to do is this: I will relieve [trial counsel] of his responsibility to represent you as your lawyer. I am going to order that he continue in an advisory capacity. So he will be present with you at the trial should you want to seek advice from him. But he will not be speaking for you at the trial, nor will anyone else speak for you. You will speak for yourself and only you will speak for yourself.
>
> Understood?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Okay. Trial is still scheduled to go forwards on Tuesday of next week. So we will see you then, and you will be representing yourself at that trial.
>
> Do you have any questions.
>
> THE DEFENDANT: Yes, ma'am. (Unintelligible) . . . Motion to Quash . . . (unintelligible) . . . added . . . (unintelligible) . . . Motion to Quash . . . (unintelligible).[3]
>
> THE COURT: Sir, that's not--
>
> THE DEFENDANT: (Unintelligible).

---

[3] The record reveals that defendant had a speech impediment and that the reporter often could not transcribe what he said. However, it appears that, after asserting he wanted to represent himself, defendant attempted to argue motions that had already been decided.

(Unintelligible) . . . it says--

THE COURT: Sir--

THE DEFENDANT: -- (unintelligible) . . . November 10th--

THE COURT: Sir--

THE DEFENDANT: -- (unintelligible) --

THE COURT: Sir, sir, time out. You know what this means. Okay. Now, I didn't ask you about those things. I'm--those, those issues are now in the past.

What I'm asking you is: Do you understand that we are going to trial on Tuesday?

THE DEFENDANT: Oh, yes, understood.

THE COURT: Very good. That's all I needed to know.

The issue of defendant's self-representation was not mentioned again. Defendant represented himself at trial, with his third appointed attorney serving as standby counsel.

Following his convictions, defendant moved for a new trial, arguing that his waiver of the right to counsel was not knowing, intelligent, and voluntary. The briefing submitted by the parties revealed that defendant apparently represented himself in another criminal trial in 2006 and was acquitted in that case. Referencing that fact, as well as the fact that defendant had discharged three appointed attorneys, the trial court denied the motion for a new trial, finding that defendant's waiver was knowing, intelligent, and voluntary. Specifically, the trial court ruled:

THE COURT: All right. Well, let me tell you, unlike--this is a, a situation where the Defendant has in the past represented himself. Once successfully so I might add.

* * *

And his--given his history a court can reasonably assume that he is aware of the downside of representing himself as well as the upside given the fact that he did so on one occasion successfully.

In this instance he went through three different lawyers and the third was, the third was appointed by me on an advisory basis and [defendant] had ample opportunity and consulted with [standby counsel.]

* * *

-3-

. . . Given [defendant's] unequivocal expressions--expression of his desire not to want to be represented by an attorney on three separate occasions,[4] given the fact that he had access to counsel throughout the course of trial, given the fact that he has--considering also that he has represented himself on one occasion somewhat successfully, although the success or merit really isn't that relevant of-- well, in another case entirely separate from this, the Court concludes that he, [defendant], was well aware of the potential disadvantages of representing himself. So, the Court is going to deny the motion.

## II. SELF-REPRESENTATION

## A. STANDARD OF REVIEW

Defendant argues that his waiver of counsel was not knowing, intelligent, and voluntary. "We review for clear error the trial court's factual findings surrounding a defendant's waiver" of the right to counsel. *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004). "However, to the extent that a ruling involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo." *Id.* The meaning of "knowing and intelligent" is a question of law that we review de novo. *People v Williams*, 470 Mich 634, 640-641; 683 NW2d 597 (2004) (citations omitted).

## B. RIGHT TO COUNSEL & WAIVER OF THAT RIGHT

The right to counsel is guaranteed by both the United States and Michigan Constitutions. *Id.* at 641-642. However, counsel cannot be forced upon a defendant, and a defendant charged with a crime may waive his right to counsel and elect to represent himself. *Id.* Like the right to counsel, the right of self-representation is protected by both the United States Constitution (implicitly) and the Michigan Constitution (explicitly). *People v Dunigan*, 299 Mich App 579, 587; 831 NW2d 243 (2013), citing US Const, Am VI; Const 1963, art 1, § 13. Nevertheless, as the United States Supreme Court has cautioned, "courts should 'indulge every reasonable presumption against waiver of fundamental constitutional rights.' " *Williams*, 470 Mich at 641, quoting *Johnson v Zerbst*, 304 US 458, 464; 58 S Ct 1019; 82 L Ed 2d 1461 (1938).

"While a defendant may choose to forgo the assistance of counsel at trial, any waiver of the right to counsel must be knowing, voluntary, and intelligent." *Russell*, 471 Mich at 188. See also *Faretta v California*, 422 US 806, 835; 95 S Ct 2525; 45 L Ed 2d 562 (1975) (explaining that, "in order to represent himself, the accused must knowingly and intelligently forgo" the right to counsel and the benefits associated therewith) (citation and quotation marks omitted). In

---

[4] Defendant expressed a desire not to be represented by his *particular* appointed counsel on three separate occasions. He did not, however, express that he did not "want to be represented by an attorney on three separate occasions." On the first two occasions, defendant sought appointment of different counsel. He only expressed his desire to represent himself on the one occasion noted above.

*People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976), our Supreme Court articulated three criteria that must be met before a trial court may grant the defendant's request to proceed *pro se*. As summarized by the Court in *Williams*, 470 Mich at 642, those requirements are:

> First, the waiver request must be unequivocal. Second, the trial court must be satisfied that the waiver is knowingly, intelligently, and voluntarily made. To this end, the trial court should inform the defendant of potential risks. Third, the trial court must be satisfied that the defendant will not disrupt, unduly inconvenience, and burden the court or the administration of court business.

"In addition, a trial court must satisfy the requirements of MCR 6.005(D)[.]" *Russell*, 471 Mich at 190. Those requirements are, in pertinent part:

> The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first
>
> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and
>
> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

If a defendant waives his or her right to counsel, MCR 6.005(E) provides, in pertinent part, that "the record of each subsequent proceeding" "need show only that the court advised the defendant of the continuing right to a lawyer's assistance (at public expense if the defendant is indigent) and that the defendant waived that right."

Our Supreme Court has repeatedly held that strict adherence to the waiver procedures is not required. See, e.g., *Russell*, 471 Mich at 191. Rather, the Court adopted a "substantial compliance" standard. *Id.*

> Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures. The nonformalistic nature of a substantial compliance rule affords the protection of a strict compliance rule with far less of the problems associated with requiring courts to engage in a word-for-word litany approach. [*People v Adkins*, 452 Mich 702, 726-727; 551 NW2d 108 (1996), overruled on other grounds by *Williams*, 470 Mich 634.]

Ensuring substantial compliance with the *Anderson* factors "provides a practical, salutary tool to be used to avoid rewarding gamesmanship as well as to avoid the creation of appellate parachutes: if any irregularities exist in the waiver proceeding, the defendant should continue to be represented by counsel." *Russell*, 471 Mich at 192.

## C. APPLICATION

With respect to the first *Anderson* requirement, the record clearly establishes that defendant made an unequivocal request for self-representation at a hearing five days before the start of trial. Defendant advocated for the withdrawal of his third appointed attorney and expressed that he wanted to represent himself.

The crux of defendant's argument on appeal, as well as our analysis of this issue, lies in the second *Anderson* requirement. "[O]nce the defendant has unequivocally declared his desire to proceed pro se the trial court must determine whether defendant is asserting his right knowingly, intelligently and voluntarily." *Anderson*, 398 Mich at 368. See also *Faretta*, 422 US at 835 (reasoning that because the defendant gives up "many of the traditional benefits associated with the right to counsel" the defendant "must knowingly and intelligently forgo those relinquished benefits.") (citation and quotation marks omitted). The United States Supreme Court has characterized a knowing and intelligent waiver of counsel as one made when the defendant "knows what he is doing and his choice is made with eyes open." *Iowa v Tovar*, 541 US 77, 88; 124 S Ct 1379; 158 L Ed 2d 209 (2004) (citation and quotation marks omitted). The trial court is not required to follow any particular script or recite any special phrases when it determines whether the defendant's choice is made "with eyes open." *Id.* Nonetheless, the *Tovar* Court explained, "before a defendant may be allowed to proceed *pro se,* he must be warned specifically of the hazards ahead." *Id.* at 88-89. In particular, "[w]arnings of the pitfalls of proceeding to trial without counsel . . . must be rigorously conveyed." *Id.* at 89 (citation, quotation marks, and alteration omitted). "[T]he existence of a knowing and intelligent waiver must depend in each case upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." *Anderson*, 398 Mich at 370.

While there is no precise formula used to determine whether a waiver is knowing, intelligent, and voluntary, our courts have stressed the importance of creating a record on this point, given the significance of the rights involved. See *Adkins*, 452 Mich at 721 ("Proper compliance requires that the court engage, on the record, in a methodical assessment of the wisdom of self-representation by the defendant."). Indeed, it is important for the trial court to engage the defendant in a colloquy as to the knowing, intelligent, and voluntary nature of the waiver "so that the record will establish that [the defendant] knows what he is doing . . . ." *Anderson*, 398 Mich at 368. See also *People v Dennany*, 445 Mich 412, 434; 519 NW2d 128 (1994) (opinion by GRIFFIN, J) (recognizing that while there are no precise guidelines, "the trial court must, on the record, advise the defendant of the dangers and disadvantages of self-representation . . . ."). "Clearly, the more searching the inquiry at this stage the more likely it is that any decision on the part of the defendant is going to be truly voluntary . . . ." *People v Brooks*, 293 Mich App 525, 538; 809 NW2d 644 (2011), vacated in part on other grounds 490 Mich 993 (2012) (citation and quotation marks omitted).

Furthermore, as articulated by our Supreme Court in *Dennany*, 445 Mich at 438 (opinion by GRIFFIN, J), not only is a record of compliance with *Anderson* important to protect the defendant's rights, but a record of compliance is also important for protecting the integrity of the trial court proceedings and to "safeguard against the opening of an appellate parachute . . . ." As recognized in *Dennany*,

-6-

Whether the prospective pro per is a naïve character who sincerely believes he can represent himself better than can a lawyer, a cagey loser who is going to try to reduce the trial to a shambles in the hope that somehow reversible error will creep in, a free soul with a touch of ham, or simply someone who wants to have some fun with the judicial establishment, *the trial judge must recognize that the first ground on appeal is probably going to be that the defendant was allowed to represent himself without having intelligently and voluntarily made that decision.* Such are the facts of life. Therefore, pragmatically, and defensively, in addition to the legal necessity of establishing that a defendant voluntarily and intelligently reached this decision, the trial court should also protect itself-and the record. [*Id.* at 437-438 (citations and quotation marks omitted; emphasis added).]

Turning to the instant case, we agree with defendant that the trial court failed to engage in a meaningful assessment as to the knowing, intelligent, and voluntary nature of defendant's waiver. In fact, the trial court engaged in virtually no inquiry at all. The transcript reveals that the April 19, 2012 hearing at which defendant was deemed to have waived his right to counsel began with a request by defendant's appointed counsel to withdraw. When asked if defendant wanted counsel to withdraw, defendant brought up the idea of representing himself. Thereafter, the trial court asked defendant two questions: (1) whether he knew that his recently-dismissed attorney could not speak for him at trial; and (2) if he knew the date on which trial started. "Instead of following the brightly illuminated path paved by the court rules" and *Anderson*, see *Brooks*, 293 Mich App at 539, the court simply stated that it was proceeding to trial the following week, as scheduled. The court paid no heed to the requirements of MCR 6.005(D) or *Anderson*, but merely accepted defendant's assertion at face value. This does not pass muster under *Anderson*.

In finding a deficiency under the second prong of *Anderson*, we remain cognizant that the applicable standards mandate only substantial compliance with the requirements found in *Anderson* and MCR 6.005 and that there are no talismanic words or phrases that must be used. See, e.g., *Russell*, 471 Mich at 191. We too decline to fashion a list or mandate a procedure that must be done in each and every case. The import of our ruling, however, is that a trial court must do *something* to ensure the defendant goes in with "eyes open." It cannot sit back and do nothing after the defendant has requested to represent himself. Simply sitting back and accepting the defendant's request neither warns the defendant of the coming pitfalls nor ensures that he is entering into the precarious world of self-representation with eyes open. Compliance with the requirements of *Anderson* cannot be fairly characterized as "substantial" when there is no compliance whatsoever. We refuse to apply the "substantial compliance" standard in such a way as to water it down to a "no compliance" standard. And, given the paucity of the trial court's inquiry, to affirm in this case would be to countenance a "no compliance" standard. The court engaged in no colloquy and failed to give even passing mention to the "pitfalls of proceeding to trial without counsel," much less "rigorously conveyed" those pitfalls. See *Tovar*, 541 US at 89 (citation, quotation marks, and emphasis omitted). In addition, the court did not even pay lip service to the court rules. There was no attempt to "advise the defendant of the charge, the maximum possible prison sentence for the offense" or any of the "risk[s] involved in self-

representation . . . ." MCR 6.005(D)(1).[5] While our courts have rejected a formalistic approach to the warnings that must be given a defendant, they have consistently held that the court "*must make* the pro se defendant aware of the dangers and disadvantages of self-representation, *so that the record will establish that he knows what he is doing and his choice is made with eyes open.*" *Dennany*, 445 Mich at 432 (citations and quotation omitted; emphasis added) (opinion by GRIFFIN, J). Though it pains us to do so, we cannot, in good conscience, determine that that was done in the instant case.

We find this case to be comparable to *Brooks*, 293 Mich App at 539. In that case, the trial court failed to engage in a meaningful assessment of the defendant's waiver of counsel. *Id.* The court failed to engage in any dialogue and made no attempt to comply with the court rules; consequently, we found that the court failed to substantially comply with *Anderson* and MCR 6.005(D). *Id.* For many of the reasons stated above, we find that the compliance in this case was far less than substantial and not in line with what is required by *Anderson* and *Adkins*. See *id.* We also find the instant case to be comparable to *Dennany*, 445 Mich at 447-448 (opinion by GRIFFIN, J).[6] The Court's opinion in *Dennany* was a consolidation of two cases involving two defendants—Jones and Dennany. *Id.* at 416-417. Less than a month before trial was to begin, Jones stated that he wanted standby counsel to handle a pre-trial hearing, and thereafter, Jones wanted to represent himself. *Id.* at 418. The court appointed counsel to handle the pretrial hearing, then asked if Jones still wished to represent himself. *Id.* Jones responded in the affirmative, and the trial court, after assuring Jones that standby counsel could help him with certain tasks, allowed Jones to act as his own attorney. *Id.* at 418-419. The Court concluded that Jones's waiver was invalid because "the trial judge never advised [Jones] of the dangers and disadvantages of self-representation as contemplated by *Faretta*[,]" "nor did he conduct the detailed three-part inquiry expressly required by *Anderson*." *Id.* at 447.

In arguing that we should find defendant's waiver was knowing, intelligent, and voluntary, the prosecutor argues that we should be swayed by the fact that defendant represented himself in an earlier criminal trial. In determining whether a waiver was knowing, intelligent, and voluntary, a trial court may consider a variety of "case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Tovar*, 541 US at 88. A defendant's previous experience in and personal involvement with the criminal justice system can indicate "that he knew what he was doing and made his choice with eyes open." *Anderson*, 398 Mich at 371. In *Adkins*, 452 Mich at 711 n 2; 729-730, our Supreme Court found that the defendant's waiver was knowing,

---

[5] Not to mention that after taking defendant's waiver at a pre-trial motion for appointed counsel to withdraw, the trial court, contrary to MCR 6.005(E), did not make any attempt to consider the validity of defendant's waiver at trial. Furthermore, the trial court gave no consideration whatsoever to the third *Anderson* factor—a determination of whether defendant's self-representation would not disrupt or unduly burden the court.

[6] Although Justice Griffin's lead opinion was joined by only two other Justices—Justice Mallett and Justice Brickley—Justices Cavanagh and Levin concurred with the result reached in the lead opinion, but wrote separately on unrelated matters.

intelligent, and voluntary based, in part, on the fact that defendant had represented himself in an earlier criminal proceeding. However, we note that unlike in the instant case, the trial judge in *Adkins* engaged the defendant in a lengthy colloquy about self-representation, wherein it described the role of counsel, the risks and hazards of self-representation, explained that the defendant would be subject to the rules of evidence and would be expected to act with decorum in the court, and explored the defendant's educational and employment background. *Id.* at 709-710, 729-730.

We are not convinced by the prosecutor's argument. As an initial matter, we note that there is no indication in the record regarding whether the trial court knew that defendant had previously represented himself at the time it allowed him to act *pro se* in the instant case. And, given the importance of the rights at stake in foregoing the assistance of counsel and forging ahead as one's own attorney, we question whether allowing such post-hoc justifications for accepting a waiver of the right to counsel are advisable. See *Raulerson v Wainwright*, 469 US 966, 971; 105 S Ct 366; 83 L Ed 2d 302 (1984) (MARSHALL, J, dissenting) (opining that a "*post hoc* rationalization of the trial court's failure to engage in a *Faretta* inquiry is not only at odds with the holding and spirit of *Faretta,* but also with lower court opinions construing *Faretta.*").[7] Regardless, we do not believe the record is adequate to show a knowing, intelligent, and voluntary waiver in the instant case. Although defendant represented himself in an earlier proceeding—and was apparently acquitted—he did so six years ago, and the record in regard to this prior representation can only charitably be characterized as scant. There is no indication whether defendant was warned of any of the risks or pitfalls of self-representation at the earlier proceeding. There is no indication whether the trial court in the earlier proceeding engaged in the type of colloquy that was missing in this case. There is also no indication regarding whether defendant represented himself in the entire proceeding, or whether he only represented himself for parts of it. And this is hardly a case where it appears, at least from the record and defendant's various letters written to the trial court, that defendant was well-versed in the risks involved with self-representation or otherwise knew of the gravity of the task he sought to undertake. Cf. *Anderson*, 398 Mich at 370-371 (holding that a defendant's previous legal experience, combined with "the sophisticated and comprehensive nature" of his reasons for dismissing appointed counsel, showed that the defendant's choice to proceed *pro se* was knowing, intelligent, and voluntary). Again, because of the lack of any type of record or inquiry into this matter, we can at best speculate about the impact this six-year-old experience had on defendant at the time he waived his right to counsel in the instant case.

---

[7] Indeed, conducting a hearing or even brief inquiry allows a trial court opportunity to ensure that the defendant truly knows and understands what he is doing, and it provides an opportunity to create a record for appeal to prevent the defendant from later claiming that his waiver was not knowing, intelligent, and voluntary. See *Raulerson*, 469 US at 970 (MARSHALL, J, dissenting). "As a result, once a defendant affirmatively states his desire to proceed *pro se,* a court should cease other business and make the required inquiry. It is through this hearing that the right to counsel is protected." *Id.*

In addition, even though defendant previously represented himself, we are again faced with the reality that the trial court made no effort to determine whether defendant knew and understood the pitfalls of self-representation. In this regard, the instant case is distinguishable from *Adkins*, 452 Mich at 709-710, 729-730, where the trial court engaged in an extensive colloquy with the defendant and determined, based on that colloquy and on the defendant's prior experience with self-representation, that the defendant's waiver was knowing, intelligent, and voluntary. Given the lack of inquiry by the trial court, we find the instant case is comparable to *United States v Kimmel*, 672 F2d 720 (CA 9, 1982).[8] In that case, the defendant had previously represented himself "in at least one case[.]" *Id.* at 722. However, the trial court failed to engage the defendant in any type of inquiry as to whether his current waiver was knowing, intelligent, and voluntary. *Id.* The Ninth Circuit considered the defendant's previous foray into self-representation, but explained that that previous experience was not dispositive. *Id.* "While this background information suggests that [the defendant] appreciated the risks of self-representation, we need more details to conclude that he sufficiently understood them." *Id.* "For example, it would be helpful to know whether [the defendant] was informed about these risks when he represented himself previously." *Id.* Further, there was no colloquy concerning what the defendant knew and understood at the time he surrendered his right to counsel and decided to act as his own attorney. *Id.* Cf. *United States v Gerritsen*, 571 F3d 1001, 1011-1012 (CA 9, 2009) (finding that the defendant's waiver was knowing, intelligent, and voluntary based on a colloquy with the trial court and based on the fact that the defendant had previously represented himself "in at least six jury trials[.]"). Here, just as in *Kimmel*, the record lacks sufficient detail about defendant's previous waiver. And, the record is completely void of any inquiry into what defendant knew at the time he made his waiver. Accordingly, notwithstanding the fact that defendant previously represented himself, there was insufficient record evidence to determine whether defendant's waiver of counsel was knowing, intelligent, and voluntary.

## D. REMEDY

Because of the trial court's failure to substantially comply with *Anderson*, defendant is not required to show prejudice, and reversal is required in this case. *Russell*, 471 Mich at 194; *People v Willing*, 267 Mich App 208, 224-225; 704 NW2d 472 (2005). Accordingly, we vacate defendant's conviction and sentence and remand for a new trial. See *id.* See also *Brooks*, 293 Mich App at 540. However, it is with great reluctance that we arrive at this conclusion. It appears quite likely that this was a situation where defendant was more than content to forego the assistance of counsel and steer the ship himself. We are also aware that our decision affords a defendant who appeared to want to represent himself a new trial specifically because he was allowed to represent himself. If this appears baffling, it is because it should. Had the trial court taken the time to make a record and engage defendant in even a brief colloquy, the result in this case might very well be different. It was perhaps for this reason that our Supreme Court admonished trial courts with regard to the importance of taking a valid waiver and ensuring that such a waiver is knowing and intelligent:

---

[8] While decisions from lower federal courts are not binding, we may look to them as persuasive authority. *People v Jackson*, 292 Mich App 583, 595 n 3; 808 NW2d 541 (2011).

-10-

[T]he trial judge must recognize that the first ground on appeal is probably going to be that the defendant was allowed to represent himself without having intelligently and voluntarily made that decision. Such are the facts of life. Therefore, pragmatically, and defensively, in addition to the legal necessity of establishing that a defendant voluntarily and intelligently reached this decision, the trial court should also protect itself-and the record. [*Dennany*, 445 Mich at 437-438 (opinion by GRIFFIN, J) (Citation and quotation marks omitted).]

See also *Williams*, 470 Mich at 645 (emphasizing the importance of making a record in regard to the defendant's right of self-representation in order to prevent the defendant from making "a mockery of the criminal justice system and the constitutional rights sought to be protected.") (citation and quotation omitted).

## III.  CONCLUSION

We vacate defendant's conviction and sentence and remand for a new trial. Because our analysis of this issue is dispositive, we do not address the remainder of defendant's arguments. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Kathleen Jansen
/s/ Jane M. Beckering