*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DENEAL LEE SMITH,

Defendant-Appellant.

UNPUBLISHED
March 17, 2022

No. 353734
Allegan Circuit Court
LC No. 18-022225-FC

Before: RIORDAN, P.J., and K. F. KELLY and SWARTZLE, JJ.

PER CURIAM.

A jury convicted defendant, Deneal Lee Smith, of two counts of armed robbery, MCL 750.529, and one count of fourth-degree fleeing and eluding a police officer, MCL 257.602a(2).[1] The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 30 to 45 years' imprisonment for each armed robbery conviction, and 2 to 15 years' imprisonment for the fleeing and eluding conviction. Defendant appeals his convictions as of right, claiming that the trial court violated his right to self-representation, raising a number of evidentiary issues, and asserting ineffective assistance of counsel. Finding no error requiring reversal, we affirm defendant's convictions.

## I. BASIC FACTS AND PROCEEDINGS

On October 15, 2018, at approximately 8:41 p.m., the Clark gas station on 10th Street in Martin, Michigan, was robbed. The clerk testified at defendant's trial that he looked up at the sound of the door chime and saw a gun pointed at his head. The robber demanded that the clerk give him all the money from the register, and the clerk complied. The clerk described the robber as a black male, with a black shirt around his face, wearing black sunglasses and gray gloves. The robber grabbed the money and a black plastic bag that he had brought with him. The robber left

---

[1] The jury acquitted defendant of three counts of possession of a firearm during the commission or attempted commission of a felony (felony-firearm), MCL 750.227b, and one count of felon in possession of a firearm, MCL 750.224f.

-1-

the store, and the gas station's manager, who had been in his office doing paperwork, followed him, hopped into his car, and began to pursue the robbery suspect, who ran north through some bushes and got into a car parked in a driveway just north of the gas station. A call about the robbery went out from dispatch at approximately 8:42 p.m. Officers from Otsego Police Department, Allegan County Sheriff's Department, and the Michigan State Police (MSP) responded.

According to the gas station manager, the suspect led him on a high-speed chase down local roads and onto US 131. At some point, the manager wrote the license plate of the fleeing car on his arm. When the suspect led the manager onto northbound US 131, the manager saw Otsego Police Officer Michael Gudith sitting in his patrol car in the median, watching southbound US 131 for any sign of the suspect. The manager stopped and gave Officer Gudith a description of the suspect's car and the car's license plate number, and told him that the suspect was headed northbound on US 131. Officer Gudith got onto northbound US 131 and informed other units that the suspect was last seen "northbound from the 106th area in a Chevy Impala." Officer Gudith caught up with the suspect's car, observed that the license plate number was identical with the one the store manager had given him, and notified other units that he was following the suspect and of their location. The suspect pulled off at Exit 55, the exit for Martin, then drove over the highway and down the ramp to merge onto southbound US 131. Officer Gudith, Allegan County Sheriff's Deputy William Greene, and MSP Trooper Michael Shaw followed, lights and sirens activated. The suspect pulled onto the shoulder of US 131, slowed almost to a stop, but then pulled back into the lane of travel, repeating this weaving motion several times for approximately two miles. Eventually, the suspect pulled onto the right shoulder of the highway and stopped. The suspect, who turned out to be defendant, was arrested, transported to the Allegan County Sheriff's Department, and eventually charged with two counts of armed robbery, one count each of fourth-degree fleeing and eluding and felon-in-possession of a firearm, and three counts of felony-firearm.

After defendant left the scene, Allegan County Sheriff's Deputy William Greene searched defendant's car, collecting and placing into evidence a pair of black sunglasses; a black, long-sleeved thermal top; and a pair of gray knit gloves; all items that were consistent with what Deputy Greene had been informed the robber was wearing. He stayed with defendant's car until it was towed to the Sheriff Department's secure garage. At about midnight, Allegan County Sheriff's Deputy Ryan Rewa discovered a black plastic bag 15 to 20 feet from the edge of the roadway in a cornfield, approximately a quarter mile south of the Clark station. He called his find into dispatch, who turned the information over to Deputy Greene. Deputy Greene came to the location, used a pair of plastic gloves to collect the bag, and placed it into an evidence bag.

Allegan County Sheriff's Department Detectives Mark Lytle and Craig Gardiner searched defendant's car again on October 16, looking specifically for a gun and for the money stolen from the gas station. Among the items searched was a pair of jeans, the pockets of which Detective Lytle turned inside out, finding a few dollars, but nothing more, and a red hoodie sweatshirt, which Detective Lytle picked up by the hood and ran his hands down. No evidence was recovered. On October 24, Allegan County Sheriff's Deputy Cory Harris, an evidence technician, searched defendant's car again, as a result of a mix-up. Deputy Harris's superior had intended for him to process a stolen car that had been recovered from Holland to determine if there was any evidence indicating who stole the car. The stolen car was a brown (or gold) Chevrolet Malibu, but Deputy Harris received instructions to "tech" the silver (or gray) Chevrolet Impala, which happened to be

defendant's car. As he was processing defendant's car, Deputy Harris found $232 dollars wadded up and shoved into the red hoodie on the back seat.

The gas station clerk, the store manager, and all of the law enforcement officials involved in the pursuit and arrest of defendant, in the subsequent investigation of the robbery, and in the search of defendant's car, testified at defendant's trial. The jury also heard from two experts who analyzed information obtained from defendant's phone and concluded that he was in the area of the robbery at the time the robbery occurred. The jury also heard from forensic scientists who concluded from their analysis of DNA obtained from the handle of the black plastic bag found by Deputy Rewa that defendant had contributed 70% of the DNA obtained and that it was "at least 150 septillion times more likely" that the DNA on the plastic bag came from defendant and three random individuals than that it came from four random individuals.

Testifying on his own behalf, defendant explained that he was driving from Kalamazoo, where he had spent the weekend with his brother, back to his home in Grand Rapids, when he stopped at the Dollar Store in Martin, near the gas station, to purchase something to repair his tire, snacks, and a two-pack of cigars. In the parking lot, he emptied the tobacco from one of the cigars and stuffed the wrapper with marijuana. He was headed back to Kalamazoo on southbound US 131 to pick up the medical marijuana that he had purchased earlier that day but accidently left at his brothers. However, he remembered that his brother would not be home and that he did not have a key to his brother's apartment. Consequently, he exited the highway, drove over the overpass, and then onto the ramp that would take him northbound on US 131. As he was merging onto US 131, he saw several police cars behind him with their lights on. Unaware of having violated a traffic law, defendant said that he was high, scared, and hysterical, and he drove on. He eventually stopped, got out of the car, and went straight to the police. Defendant denied that the man in the gas station surveillance video was him. Although he weighed 235 pounds at the time of the trial, at the time of the robbery, he weighed only 190 pounds; the clothes that the police retrieved from his vehicle were his, but they would not fit him now. He denied owning a mask, tying a shirt around his face, throwing anything out the window of his car, or having $232 in the pocket of his red hoodie. Asked how he explained his DNA on the black plastic bag, defendant explained that Sergeant Greene collected the bag and put it with other items that the sergeant had collected from defendant, and his DNA transferred from these items to the bag.

After closing arguments and jury instructions, the jury required less than two hours to return guilty verdicts for the armed robbery and fleeing and eluding charges, and to acquit defendant on the remaining charges. Defendant was sentenced as indicated, and this appeal followed.[2]

## II. RIGHT TO SELF-REPRESENTATION

Defendant first argues that the trial court violated his constitutional right to self-representation. We disagree. We review de novo whether a defendant waived his right to counsel,

---

[2] On February 15, 2022, defendant moved to remand to the trial court to expand the record. We denied the motion. *People v Smith*, unpublished order of the Court of Appeals, entered February 22, 2022 (Docket No. 353734).

but review for clear error the factual findings underlying the trial court's decision. *People v Williams*, 470 Mich 634, 640-641; 683 NW2d 597 (2004).

"The right of self-representation is guaranteed by both the Michigan Constitution, Const 1963, art, § 13, and by statute, MCL 763.1." *People v Dunigan*, 299 Mich App 579, 587; 831 NW2d 243 (2013). It is also "implicitly guaranteed by the Sixth Amendment of the United States Constitution." *Id*.

> Upon a defendant's initial request to proceed pro se, a court must determine that (1) the defendant's request is unequivocal, (2) the defendant is asserting the right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business. [*People v Russell*, 471 Mich 182, 190; 684 NW2d 745 (2004).]

The trial court must also satisfy the requirements of MCR 6.005(D), *id*. at 190-191, which states that the trial court may not permit the defendant's initial waiver of the right to counsel without:

> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer. [MCR 6.005(D).]

Technical knowledge of legal matters "simply has no relevance to an assessment of a knowing exercise of the right to self-representation." *People v Brooks*, 293 Mich App 525, 539-539; 809 NW2d 644 (2011), judgment vacated in part on other grounds, appeal denied in part on other grounds, 490 Mich 993 (2012). A request for self-representation does not become equivocal as a matter of law when accompanied by a request for stand-by counsel. *People v Hicks*, 259 Mich App 518, 527-528; 675 NW2d 599 (2003). The trial court should rule in favor of denying defendant's request for self-representation when there is uncertainty as to whether the waiver requirements have been satisfied. *Russell*, 471 Mich at 191. "[I]t is a long-held principle that courts are to make every reasonable presumption *against* a waiver of a fundamental constitutional right, including the waiver of the right to the assistance of counsel." *Id*. at 188.

Defendant's request to represent himself came at the end of the second day of pretrial an evidentiary hearing, after the trial court had denied his motion to suppress statements made at his arrest and the cash found in his car. At the conclusion of the hearing, the trial court asked if there were any other issues to address before setting a trial date. Defendant indicated that he wanted to speak to the court. After a brief consultation with defendant in the jury room, defense counsel stated to the trial court that defendant wanted to represent himself. Asked by the trial court if he wanted to represent himself, defendant said that he did, and would like his current, retained attorney "to be co-counsel." In response to the trial court's questioning, defendant indicated that

he did not believe that his attorney saw the evidence in the same way that he did and would not cross-examine the prosecution's witnesses in a way that defendant saw fit. Defendant stated that he could prove that the money was planted in his car; defendant reasoned that prior searches had not uncovered the money, so it had to come from somewhere. Defendant explained that if he had the money he would hire another attorney, but he gave all his money to his current attorney and did not have any more.

The trial court denied defendant's request to represent himself, reasoning without elaboration that defendant was not "in a position" to understand the risks of self-representation and did not have the ability to represent himself. The trial court gave defendant a choice between keeping his current attorney or getting a court-appointed attorney. Defendant stated that he would be willing to take the court-appointed attorney that he had before he hired his current attorney, but continued to insist that he believed he could represent himself.

Because the trial court did not explain the risks of self-representation to defendant, the basis for the trial court's conclusion that defendant did not understand them is unclear from the record. To the extent that the trial court's determination that defendant was not in a position to understand the disadvantages of self-representation implicated defendant's comprehension, "[c]redibility is crucial in determining a defendant's level of comprehension, and the trial court is in the best position to make this assessment." *Williams*, 470 Mich at 640 (quotation marks and citations omitted). The record is equally unclear regarding the basis for the trial court's determination that defendant lacked the ability to represent himself. Assuming that defendant's lack of ability referred to his competence, competence is a pertinent consideration when determining whether defendant knew what he was doing and chose to represent himself with "eyes open." *People v Anderson*, 398 Mich 361, 368; 247 NW2d 857 (1976). However, "competence does not refer to legal skills, for his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself." *Id.* (cleaned up).

The prosecution argues on appeal that defendant's request to represent himself was equivocal. We agree. If a defendant's request to represent himself or herself is not unequivocal, a trial court is not required to inquire further into the matter. See *id.* (stating that "once the defendant has unequivocally declared his desire to proceed Pro se the trial court must determine whether defendant is asserting his right knowingly, intelligently, and voluntarily"). The equivocal nature of defendant's request to represent himself is evinced by his statement that he would hire another attorney if he could afford one, but he had spent all of his money on his current attorney. Notwithstanding defendant's assertions that he could represent himself, this response indicated that he preferred to be represented by a retained attorney, but could not afford one. Given the choice between his current attorney and a court-appointed attorney, defendant's response that he would be willing to be represented by his prior court-appointed attorney further suggests defendant's preference for representation. It also might explain why the trial court did not advise defendant of the risks involved in self-representation, among other things. See MCR 6.005(D).

Given defendant's equivocal assertion of the right to represent himself, deferring to the trial court's credibility determinations regarding defendant's ability to comprehend the risks of self-representation and his competence to represent himself, and mindful of the presumption against waiver of the right to counsel, see *Russell*, 471 Mich at 188, we affirm the trial court's determination that defendant did not validly waive his constitutional right to counsel.

## III. DUE-PROCESS RIGHTS

Defendant next contends that the trial court's evidentiary decisions violated his right to a fair trial by depriving him of the meaningful opportunity to present a defense and to confront the witnesses against him. We disagree.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. See *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (quotation marks and citation omitted). A decision on a close evidentiary question ordinarily cannot be an abuse of discretion. See *People v Blackston*, 481 Mich 451, 467; 751 NW2d 408 (2008). Preliminary decisions involving questions of law, such as whether a rule of evidence or a statute precludes admission of the evidence, are reviewed de novo. See *Gursky*, 486 Mich at 606. A trial court necessarily abuses its discretion when it admits evidence that is inadmissible as a matter of law. See *id*. A preserved error in the admission or exclusion of evidence is not grounds for reversal unless it appears more probable than not that the error was outcome-determinative. *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

Defendant asserts that the trial court violated his right to a fair trial[3] by: (1) prohibiting defendant from cross-examining Detective Gardiner about personal knowledge he claimed to have when drafting search warrant affidavits; (2) threatening defense counsel to allow the prosecutor to present evidence of defendant's parole status if she questioned Detective Gardiner about planting evidence; and (3) instructing the jury that a disputed search was lawful. We will address each of these assertions of error in turn.

Detective Gardiner was the lead detective in this case. He retired before defendant's trial, but was the officer who submitted the four search warrant affidavits in this case. In the two affidavits which defendant finds issue, Detective Gardiner attested to observations that he did not personally make; rather, he relied on information obtained from officers who had investigated the robbery. Defense counsel sought to impeach the detective by using the affidavits to establish that he lied under oath because, as the affiant, he attested to observations that he had not personally made. The affidavit used to obtain a search warrant on October 16 stated that the gas station manager advised the affiant, i.e., Detective Gardiner, that he was certain that the person he followed in his car was the robbery suspect, but defense counsel elicited testimony from Detective Gardiner that he did not remember talking to the manager on October 16. Defense counsel also asked Detective Gardiner about the statement in a second affidavit that the affiant interviewed the manager, who said that he followed the suspect's car onto US 131 and wrote the license plate number on his arm. After the prosecutor objected to defense counsel's attempt to impeach the detective with statements that other officers had given him, the trial court prohibited defense counsel from pursuing her line of inquiry, explaining, "The issue is if it's a statement that

---

[3] "Every defendant has a due process right to a fair trial[.]" *People v Rose*, 289 Mich App 499, 517; 80 NW2d 301 (2010). In addition, "the right to present a defense is a fundamental element of due process." *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006) (cleaned up).

he got from another officer then that officer is the one that should be questioned about it, not this officer."

Detective Gardiner acknowledged on direct examination, as well as on cross-examination, that he based his affidavit in part on information gathered by other officers, and that "search warrant affidavits are basically a combined, joint effort where you rely on other officer's information." Defendant did not challenge this testimony, nor has he presented on appeal either argument or evidence establishing that this practice is improper and constitutes lying under oath. Assuming for the sake of argument that the practice is inappropriate, the record does not support defendant's claim that the trial court violated his right to present a complete defense by disallowing additional cross-examination of the detective about the affidavits. Defense counsel's goal at trial was to impeach the detective's credibility by establishing that he lied under oath on the affidavits. The trial court's decision did not undermine defendant's defense because, as shown, the jury heard testimony that would have allowed it to reach the conclusion that defendant sought.

Next, defendant argues that the trial court deprived him of a fair trial by constraining defendant's cross-examination about the multiple searches of his car by threatening that questioning the searches would open the door to the prosecution's introduction of evidence that defendant was on parole for armed robbery at the time the charged armed robbery was committed. The record does not support this claim of error.

One of defendant's theories of defense was that someone planted the cash in his car between the October 16 search by Detectives Lytle and Gardiner, which turned up nothing, and the October 24 search by Deputy Harris, which turned up the cash. Video from the department's garage showed that Detective Gardiner went into the car early on October 23, and defense counsel wanted to question Detective Gardiner about this incident. Although skeptical of the relevance of Detective Gardiner's October 23 entry into defendant's car, the trial court nevertheless allowed defense counsel to cross-examine the detective about it. Defense counsel established through her cross-examination of Detective Gardiner that he did not search defendant's car on October 23, but briefly went into it to get some information from a McDonald's receipt. Defense counsel used this testimony during her closing argument to imply that cash was planted in the car on the morning of October 23, to be discovered later that evening by Deputy Harris. Clearly, the trial court's ruling did not prevent defendant from presenting to the jury evidence and argument relevant to one of his theories of defense.

Lastly, defendant asserts that the trial court erred by instructing the jury that the searches of defendant's car were lawful. Because defendant failed to preserve this issue for review with a timely objection on the record, our review is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 764-765, 772; 597 NW2d 130 (1999). "An error is plain if it is 'clear or obvious,' and it affects substantial rights if it 'affected the outcome of the lower court proceedings.' " *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019), quoting *Carines*, 460 Mich at 764-765.

The trial court did not plainly err when it instructed the jury that the searches of defendant's car were lawful. Before trial, defendant challenged the lawfulness of Deputy Harris's search of defendant's car and sought to suppress the cash recovered during that search. The trial court ruled that the deputy's search was lawful because defendant was on parole, and one of the conditions of

his parole was that he and his property were subject to warrantless searches. Defendant has not challenged this ruling on appeal.[4] Accordingly, the trial court did not plainly err by instructing the jury that the searches were lawful. Nor has defendant established that the instruction undermined his theory that an officer planted the cash in his car between October 16 and October 24. The trial court's instruction did not preclude the jury's finding that the money was planted during a lawful entry into defendant's car.

For the foregoing reasons, we conclude that defendant has failed to establish that the trial court's evidentiary decisions constituted abuses of the trial court's discretion or violations of his right to a fair trial. Defendant was able to use affidavits in an attempt to impeach Detective Gardiner's credibility, as well as to cross-examine the detective regarding his October 23 entry into defendant's impounded car. The trial court's instruction about the lawfulness of the searches of defendant's car did not bar the jury from concluding that, during one of those lawful entries, someone planted cash in defendant's red hoodie.

## IV. HEARSAY

Finally, defendant argues that the trial court committed plain error affecting his substantial rights by allowing the prosecutor to present extensive hearsay testimony, and that his defense counsel rendered ineffective assistance by failing to object to the hearsay. We disagree.

As defendant acknowledges, because this claim of error comes to us unpreserved, our review is limited to plain error affecting defendant's substantial rights. As already indicated, "[a]n error is plain if it is 'clear or obvious,' and it affects substantial rights if it 'affected the outcome of the lower court proceedings.' " *Miller*, 326 Mich App at 725-726, quoting *Carines*, 460 Mich at 764-765. Whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. *Id.* "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Anderson*, 284 Mich App 11, 13; 772 NW2d 792 (2009) (quotation marks and citation omitted). Because defendant failed to preserve this issue for appellate review by moving for a new trial or an evidentiary hearing to develop the record, *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000), our review is limited to mistakes apparent on the record, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

An out-of-court statement offered into evidence to prove the truth of the matter asserted is hearsay. MRE 801(c). Hearsay is not admissible except as provided by the rules of evidence. MRE 802. "There is no exception to the hearsay rules for statements transmitted by a police radio. These statements were not admissible merely because they were transmitted by a police radio." *People v Eady*, 409 Mich 356, 361; 294 NW2d 202 (1980). In some instances, however, radio transmissions offered not to prove the truth of the matter asserted, but to show the motive of officers for pursuing a particular vehicle and arresting a particular defendant, are admissible. See

---

[4] In his motion to remand, defendant questions the motives for the search by Deputy Harris but does not appear to challenge the legality of the search itself.

*People v Pawelczak*, 125 Mich App 231, 235; 336 NW2d 453 (1983). In addition, "even where evidence is hearsay its admission is harmless error where the same facts are shown by other competent evidence." *People v Lewis*, 168 Mich App 255, 268; 423 NW2d 637 (1988).

Much of the testimony to which defendant objects arguably fell under the present sense impression or the excited utterance exceptions to the hearsay rule. The gas station managers statements to Officer Gudith were excited utterances, statements "relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition." MRE 803(2). The "startling event or condition" being the high-speed chase of the robbery suspect. Likewise, relaying information that another officer called into dispatch while actively pursuing a robbery suspect might be considered a present sense impression, "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." MRE 803(1). In this case, the "event or condition" would be the active pursuit of the suspect. Further, given defendant's denial that he robbed the gas station, and his theory that the gas station manager lost sight of the robber during the chase and mistakenly fell in behind defendant, thinking that he was the robber, the radio transmissions arguably were admissible to show why officers pursued defendant's silver Chevrolet Impala and arrested defendant. See *Pawelczak*, 125 Mich App at 235.

But even if the testimony which defendant finds objectionable was inadmissible hearsay and the trial court plainly erred by admitting it, its admission was harmless, given that the same facts were established by evidence that was not hearsay. Defendant objects to testimony from Whitney Wisner, Deputy Director of Allegan County Central Dispatch, regarding what the gas station manager and Officer Gudith said about the description of the robbery suspect's car and its license plate number. However, the same facts were available from the recording of the 911 call, which was played for the jury without objection from defendant. It was also available from Officer Gudith and the gas station manager, both of whom testified at trial. Defendant objects to the dispatch operator's report that Deputy Rewa found a black plastic shopping bag. However, the same information was available from Deputy Rewa, who testified at trial. Defendant further objects to hearsay testimony related to Deputy Harris's search of the wrong car, but evidence regarding the erroneous search was presented through the trial testimony of those involved: Deputy Harris, Sergeant Morgan Sullivan, and Lieutenant Bretton Ensfield. Lastly, defendant objects to Deputy Greene's statement that the black thermal shirt he found in defendant's car was consistent with Deputy James Anderson's description of the face covering the gas station's surveillance video showed the robber wearing. Again, evidence regarding the type of facial covering the robber was wearing was available to the jury through Deputy Anderson's testimony and the surveillance video of the robbery, which the jury saw twice, and could be compared to the physical evidence collected from defendant's car.

As to defendant's claim of ineffective assistance of counsel, effective assistance of counsel is presumed and defendant bears a heavy burden to prove otherwise. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. See *Smith v Spisak*, 558 US 139, 149; 130 S Ct 676; 175 L Ed 2d 595 (2010); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Defendant has failed to establish either prong.

As already indicated, much of the testimony to which defendant objects was admissible as present sense impression or excited utterances exceptions to the hearsay rule, or admissible to show why officers pursued defendant's car and arrested defendant. MRE 803(1) and (2); see *Pawelczak*, 125 Mich App at 235. Any objection would have been futile, and counsel is not ineffective for raising futile arguments. See *People v Gist*, 188 Mich App 610, 613; 470 NW2d 475 (1991) (holding that defense counsel was not ineffective for failing to object when an objection would have been pointless). Further, even if counsel's performance did fall below an objective standard of reasonableness under professional norms, because the facts conveyed by the alleged hearsay were shown by other competent evidence, defendant cannot show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See *Trakhtenberg*, 493 Mich at 51. Accordingly, defendant's claim of ineffective assistance must fail.

## V. CONCLUSION

There were no errors requiring reversal. We affirm.

/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Brock A. Swartzle

-10-