*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

GERARD GARCIA, JR.,

       Defendant-Appellant.

UNPUBLISHED
March 14, 2024

No.  365159
Ottawa Circuit Court
LC No.  21-044556-FH

Before:  SWARTZLE, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

Defendant appeals as of right his convictions of fourth-degree fleeing and eluding a police officer, MCL 257.602a(2); and two counts of resisting and obstructing a police officer, MCL 750.81d(1).  The trial court sentenced defendant to one day of incarceration with credit for one day of time served for each conviction, and sentenced defendant to two years of probation for fleeing and eluding a police officer.  On appeal, defendant contends that the trial court erred by granting his request for self-representation at trial.  We affirm.

## I.  FACTUAL BACKGROUND

This case stems from a traffic stop in which a law enforcement officer initiated a traffic stop, during which he repeatedly attempted to speak with defendant, but defendant ignored the officer and drove away.  The officer requested backup and followed defendant until a parks department truck at train tracks boxed in defendant's car.  Defendant exited his vehicle when asked by another officer but he resisted the officer's placement of handcuffs and kicked the officer in his shin during the struggle.[1]

---

[1] Much of this interaction was captured in a dash camera video recording played for the jury.

-1-

Defendant waived his right to legal representation and represented himself at trial. He cross-examined witnesses, called witnesses and elicited testimony, and testified in his own defense. A jury convicted defendant of the charged offenses. Defendant now appeals.

## II. STANDARD OF REVIEW

On appeal, defendant claims that the trial court erred by permitting him to waive legal representation and defend himself at trial. Defendant did not preserve this issue for appellate review, but our Supreme Court recently held that the "forfeiture doctrine" set forth in *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999), does not apply when "a self-represented defendant fails to object when the trial court fails to obtain a valid waiver of the right to counsel." *People v King*, 512 Mich 1, 4; ___NW2d___ (2023). Therefore, we review for clear error a trial court's findings whether defendant's waiver of counsel was knowing and intelligent, but the meaning of knowing and intelligent waiver is a question of law that courts review de novo. *People v Williams*, 470 Mich 634, 640; 683 NW2d 597 (2004). "Clear error occurs if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018) (quotation marks and citation omitted). This Court "indulge[s] every reasonable presumption against waiver of that right." *People v Adkins (After Remand)*, 452 Mich 702, 721; 551 NW2d (1996), abrogated on other grounds by *Williams*, 470 Mich 634, 641 n 7 (clarifying that the abuse-of-discretion standard does not apply to Sixth Amendment waivers). "Credibility is crucial in determining a defendant's level of comprehension, and the trial judge is in the best position to make this assessment." *Williams*, 470 Mich at 640 (quotation marks and citation omitted).

## III. ANALYSIS

Defendant contends that the trial court should have denied his request to represent himself at trial because his mental illness made him incompetent to waive the right to counsel. We disagree.

"The right of self-representation is secured by both the Michigan Constitution, Const 1963, art 1, § 13, and by statute, MCL 763.1." *People v Dunigan*, 299 Mich App 579, 587; 831 NW2d 243 (2013). The "right is also implicitly guaranteed in the [S]ixth [A]mendment to the United States Constitution." *People v Anderson*, 398 Mich 361, 366; 247 NW2d 857 (1976). The trial court must determine that the defendant meets the following requirements:

> To invoke the right of self-representation: (1) a defendant must make an unequivocal request to represent himself, (2) the trial court must determine that the choice to proceed without counsel is knowing, intelligent, and voluntary, and (3) the trial court must determine that the defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business. [*Dunigan*, 299 Mich App at 587 (quotation marks and citation omitted).]

The trial court must also comply with the requirements of MCR 6.005(D). After a defendant waives the right to counsel, the trial court must reaffirm that waiver in subsequent hearings.

MCR 6.005(E). The trial court's adherence to these requirements is reviewed for "substantial compliance." *Adkins (After Remand)*, 452 Mich at 726-727.

When discussing whether a defendant asserted the right knowingly, intelligently, and voluntarily, our Supreme Court noted that "[d]efendant's competence is a pertinent consideration in making this determination." *Anderson*, 398 Mich at 368. "A defendant may not waive his or her right to counsel if his or her mental incompetency renders him or her unable to understand the proceeding and make a knowing, intelligent, and voluntary decision." *People v Brooks*, 293 Mich App 525, 542; 809 NW2d 644 (2011), vacated in part on other grounds 490 Mich 993 (2012). In *Indiana v Edwards*, 554 US 164, 174; 128 S Ct 2379; 171 L Ed 2d 345 (2008), the United States Supreme Court distinguished between a defendant's competency to stand trial and his competency to represent himself at trial. The Court explained:

> In certain instances an individual may well be able to satisfy [the] mental competence standard [to stand trial], for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel. [*Id*. at 175-176.]

A defendant's "technical legal knowledge is not relevant to the determination." *Id*. at 172 (quotation marks and citation omitted). But, a defendant's

> [d]isorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities, anxiety, and other common symptoms of severe mental illnesses can impair the defendant's ability to play the significantly expanded role required for self-representation even if he can play the lesser role of represented defendant. [*Id*. at 176 (quotation marks and citation omitted; alteration in original).]

In this case, defendant concedes that the trial court complied with the requirements under *Anderson* and MCR 6.005(D) for proper waiver of the right to counsel. However, defendant asserts that the trial court committed clear error when it accepted defendant's waiver because defendant's mental illness invalidated the trial court's determination that the waiver was unequivocal, knowing, and intelligent.

The record reflects that the trial court engaged in a searching inquiry of defendant's competency to represent himself. Before permitting defendant to represent himself at trial, the trial court held two separate competency hearings and reviewed two competency evaluations of defendant. In the first report, defendant was deemed incompetent to stand trial but stated that he could become competent to stand trial with therapy. In the second report, defendant was deemed competent to stand trial. The report indicated that defendant had mild to moderate schizophrenia, which manifested through delusions, but it also indicated that defendant demonstrated rational and intellectual understanding of the criminal proceedings.

After receiving these reports, the trial court observed defendant in various proceedings and engaged in two separate colloquies with defendant regarding his ability to represent himself at trial. During the trial court's first inquiry, it expressed concern that defendant was only recently deemed competent to stand trial and told him that he would be unwise to represent himself. The court determined that it would revisit this issue at trial. On the first day of trial, the trial court

granted defendant's request to waive his right to counsel after engaging defendant in a discussion during which defendant expressed that he had studied Michigan law and took the opportunity to observe a trial in preparation for his own trial. We recognize that we have not had the same opportunity to view defendant's demeanor during these exchanges as the trial court had. See *Williams*, 470 Mich at 640. However, review of the exchanges between defendant and the trial court reveals that defendant presented himself as coherent, engaged, and rational in his discussion with the trial court. Further, the record reflects that he had the foresight to prepare himself for trial through study and observation of trial proceedings in advance of his own trial. The exchanges between the trial court and defendant demonstrate that the trial court made a proper inquiry and appropriately considered defendant's competency to represent himself before it accepted defendant's waiver.

Defendant asserts that his paranoia, which centered on police officers, prevented him from competently performing at trial. Defendant points to several instances in the record to support his assertion that he lacked competency to represent himself. Specifically, defendant points to his performance during jury selection, his inability to show that someone altered the dashcam video of the traffic stop, and his inability to meaningfully cross-examine the police officers who testified at trial.

As previously noted, a defendant's "[d]isorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities, anxiety, and other common symptoms of severe mental illnesses can impair the defendant's ability" to represent himself. *Edwards*, 554 US at 176 (quotation marks and citation omitted; alteration in original). In this case, however, defendant does not identify which of the symptoms of severe mental illness identified in *Edwards* impeded his competency to represent himself. Instead, he asserts that the paranoia associated with his schizophrenia made him incompetent to represent himself. Addressing each of defendant's examples of his incompetency, we do not agree that defendant could not "carry out the basic tasks needed to present his own defense without the help of counsel." *Id*. at 175-176. The record establishes that defendant was competent to represent himself at trial.

Certainly, defendant made remarks during trial that were odd or irrelevant to the charges at issue. However, review of the entire trial reveals that defendant exhibited attentiveness, concentration, and clear, rational thought throughout trial. During jury selection, defendant expressed concern over jury bias, asking a potential juror, "Over the course of U.S. United States history, would you agree that white lives matter more due to the majority who are raised in hate?" He also called the jury "closed minded." But racial bias in the jury is a legitimate concern for a fair trial. See *Ham v South Carolina*, 409 US 524, 527; 93 S Ct 848; 35 L Ed 2d 46 (1973). Although defendant may not have articulated his inquiry into any potential racial bias in the most eloquent manner, such is not a requirement for competency. The record indicates that defendant could focus on the task of picking an impartial jury and effectuated his goal of ensuring an unbiased jury. His voir dire of potential jurors did not demonstrate a lack of organized thinking, deficits in attention or concentration, impaired expressive ability, or anxiety. See *Edwards*, 554 US at 176.

Next, defendant asserts that his inability to prove that someone altered the video of the traffic stop and his inability to cross-examine the police officers showed his incompetency. These arguments, however, address defendant's lack of legal skill instead of his mental capacity. See *id*. at 172. Both of these arguments boil down to the fact that defendant did not present a winning

defense theory. Neither of these examples necessarily dictate that defendant exhibited disorganized thinking, deficient attention and concentration, impaired expressive ability, anxiety, or other symptoms of mental illness that impaired his ability to present a defense. See *id*. at 176.

Defendant's theory of the case asserted that the police officers involved in this case had been surveilling and harassing him after they arrested his roommate. Further, according to defendant's theory of the case, defendant did not respond to Holland Department of Public Safety Sergeant Caleb Dullock out of fear because Sergeant Dullock attacked defendant's vehicle and someone altered the video evidence of this. His defense theory was not a winning legal argument sustained by the evidence presented at trial. We are not persuaded that we must interpret this as indicative of paranoia, when the record indicates that defendant presented his theory coherently to the jury by eliciting testimony during cross-examination and through his own testimony.

During his opening statement, defendant told the jury that his failure to stop occurred because of a misunderstanding and that he had a reason for not stopping his vehicle when Sergeant Dullock approached him. In support of this theory, defendant elicited testimony during cross-examination of Sergeant Dullock and Officer Jose Mendoza that they had previous run-ins with defendant, including an incident involving the arrest of his roommate. Defendant also elicited testimony from Detective Meghan Rohn that she was conducting surveillance when she saw defendant and called Sergeant Dullock to watch for defendant's vehicle. Finally, when defendant testified on his own behalf, he provided his version of the events to the jury. He testified that the video of the traffic stop was doctored to exclude evidence of Sergeant Dullock attacking his vehicle and that defendant did not respond to Sergeant Dullock because he feared for his own safety. During closing argument, defendant reiterated his theory that the police orchestrated the traffic stop and that Sergeant Dullock attacked him.

Through both his direct and cross-examination of witnesses, defendant conveyed his theory of the case that the officers had a vendetta against him and that he did not comply during the traffic stop out of fear. His questions remained focused on the traffic stop and his concerns regarding his run-ins with officers before the incident. He ably presented his theory of the case to the jury. The record reflects that he focused on the task at hand. Although he ultimately failed to persuade the jury of his defense theory, he presented it in a coherent, concentrated fashion. Accordingly, we reject defendant's argument that defendant's performance at trial undermined the trial court's determination that defendant was competent to represent himself.

Despite claiming that he lacked the mental capacity to represent himself at trial, defendant demonstrated that he had the mental capacity to "carry out the basic tasks needed to present his own defense without the help of counsel." *Id*. at 175-176. The trial court first determined defendant's competency to stand trial. The trial court also made proper inquiry and correctly determined defendant's competency to waive legal representation at trial. The record indicates that defendant competently carried out the basic task of presenting a defense. In sum, the trial court did not clearly err when it determined that defendant unequivocally, knowingly, and intelligently waived representation. Defendant did not exhibit "[d]isorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities, anxiety, and other common

symptoms of severe mental illnesses . . . ." *Id*. at 176 (quotation marks and citation omitted; alteration in original). Therefore, defendant is not entitled to a new trial.

Affirmed.

/s/ Brock A. Swartzle
/s/ James Robert Redford
/s/ Christopher P. Yates